833 F.2d 1113
 DISABLED IN ACTION OF PENNSYLVANIA, on behalf of its
members, and Young, Hugh; Deangelo, John; Falls, James;
Lohr, Michael; Scott, Dena; Place, Walter; Margolis,
Stephen; Brock, Joyce; and Elliott-Vandivier, Wendy on
behalf of themselves and all others similarly situated, Appellants
v.
SYKES, Dudley R., Commissioner, Philadelphia Department of
Public Property, and City of Philadelphia.
 No. 87-1021.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 3, 1987.
Decided Nov. 23, 1987.
 
 Stephen F. Gold (argued) Philadelphia, Pa., for appellants.
 Susan Shinkman (argued), Divisional Deputy City Sol., Philadelphia, Pa., for appellees.
 William Kanter, Mark W. Pennak, Dept. of Justice, Washington, D.C., for United States, Dept. of Transp.
 Before SEITZ, MANSMANN and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 This action involves the interpretation of federal regulations setting forth the extent of the obligation of recipients of federal funds for renovation of mass transit facilities to make those facilities accessible to handicapped persons. After careful review of the regulations and the cited authorities and in light of the interpretation of its regulations by the United States Department of Transportation ("the DOT") subsequent to the district court's decision, we hold that compliance by the City of Philadelphia and the Southeastern Pennsylvania Transportation Authority ("SEPTA") with the "special efforts" requirements of the DOT regulations as set forth in Section 27.77 of the former regulations, 49 C.F.R. 27.77 (1981), did not excuse compliance with the accessibility requirements of 49 C.F.R. 27.67(b) (1985) in connection with renovations to the Columbia Avenue subway station, which serves Temple University in Philadelphia.
 
 
 2
 Therefore, we will vacate the district court's order granting summary judgment for the defendants because the order was based solely upon the conclusion that the defendants had complied with the "special efforts" requirements as a matter of law. Furthermore, we will reverse the order denying partial summary judgment for the plaintiffs and remand for entry of an order granting partial summary judgment in favor of the plaintiffs as to the defendants' duty, in compliance with the regulations, to make the northeast entrance to the Columbia Avenue subway station's northbound terminal usable by persons in wheelchairs.
 
 I.
 
 3
 In 1979, the DOT enacted regulations entitled "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefitting from Federal Financial Assistance."[1] 49 C.F.R. Part 27 (1979). The 1979 regulations were promulgated to comply with U.S. Department of Health, Education and Welfare coordination guidelines, issued in 1978, implementing Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794 ("Section 504"). These HEW guidelines required that all recipients of federal funds integrate handicapped persons into the same programs available to others, rather than treat them as a separate group in "special" programs. See 45 C.F.R. Secs. 85.1-85.58 (1980). Subpart C of the 1979 DOT regulations, 49 C.F.R. Part 27 (1979), which dealt with the accessibility of facilities, stated that it:
 
 
 4
 does not necessarily require a recipient to make each of its existing facilities or every part of an existing facility accessible to and usable by handicapped persons.
 
 
 5
 49 C.F.R. Sec. 27.65(a).
 
 However, Subpart C did require that:
 
 6
 Each facility or part of a facility which is altered by, on behalf of, or for use of a recipient ... in a manner that affects or could affect the accessibility of the facility or part of the facility shall, to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by handicapped persons.
 
 
 7
 49 C.F.R. 27.67(b).
 
 
 8
 Subparts D and E of these regulations imposed additional program-specific requirements regarding the accessibility of facilities and services. Subpart D contained program-specific requirements for airports, railroads and highways. Subpart E, which contained requirements pertaining to mass transportation, specifically required that stations within the rapid and commuter rail systems which served institutions of higher learning, such as the Columbia Avenue subway station,[2] "must be accessible to wheelchair users." 49 C.F.R. 27.87(a) (1979).
 
 
 9
 One month after the 1979 regulations were promulgated, suit was filed challenging the validity of Subpart E of these regulations. American Public Transit Association v. Goldschmidt, 485 F.Supp. 811 (D.D.C.1980), rev'd, 655 F.2d 1272 (D.C.Cir.1981) ("APTA"). The Court of Appeals for the D.C. Circuit, referring to the Supreme Court's decision in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), held that because Subpart E of the DOT's regulations could be read to require extensive modifications of existing systems and impose extremely heavy financial burdens on local transit authorities, the regulations exceeded the DOT's authority to enforce Section 504. APTA, 655 F.2d at 1280. The court remanded the case to the DOT to allow the DOT to ascertain whether Subpart E was also based on other enabling legislation. Id. at 1280.
 
 
 10
 In response to the court's remand the DOT published an interim rule in 1981 deleting Subpart E of 49 C.F.R. Part 27 and substituting a new section 27.77 in Subpart D. 46 Fed.Reg. 37488 (1981). This new section 27.77 did not impose any program-specific requirements regarding mass transportation facilities but was limited to mass transportation services. Id. at 37492. This section established a system whereby recipients of federal funds could engage in "special efforts" to satisfy their obligations for promoting transportation services to handicapped individuals.[3] Id. The only modification to Subpart C was to delete any reference to Subpart E. Id. at 37492.
 
 II.
 
 11
 From 1979 through 1986, officials from the City of Philadelphia and from SEPTA[4] planned and executed a $5.3 million renovation of the Columbia Avenue subway station. The Urban Mass Transportation Administration ("UMTA"), an agency of the DOT, provided $4.3 million in grants for the Columbia Avenue station renovation pursuant to Section 3 of the Urban Mass Transportation Act, 49 U.S.C. 1602. The proposal for the Columbia Avenue station renovation, which included the construction of an elevator shaft to service the northbound platform of the station, was submitted in 1978 and funding initially was approved in 1979.
 
 
 12
 In 1981, the City of Philadelphia requested UMTA's approval of the City's revised plan to delete the proposed elevator shaft at the Columbia Avenue subway station. Joseph Mayer, Director, Office of Engineering, UMTA, informed the City by letter of December 14, 1981 that:
 
 
 13
 Since it is this Administration's view that the method of compliance with Section 504 of the Rehabilitation Act of 1973 is a matter of local preference and since the City has filed its certification of compliance with the "Special Efforts" requirements published in the federal register on July 20, 1981, your decision to make this change can be made without UMTA's approval.
 
 
 14
 In effect, UMTA stated that it need not approve the proposal as long as the requirements for accessibility of services in Subpart D of Part 27 were satisfied, thereby also meeting the requirements of Subpart C of Part 27, 49 C.F.R. Sec. 27.67 by making the facilities accessible as well. The project was thereupon completed without the addition of the elevator.
 
 
 15
 The plaintiffs filed this declaratory judgment action claiming principally that the City's failure, as part of the renovation, to make the Columbia Avenue station accessible to mobility-impaired persons violates section 504 of the Rehabilitation Act, as amended, 29 U.S.C. Sec. 794 and the regulations issued pursuant thereto.[5] The plaintiffs claimed that the defendants had failed to comply with the requirements of Subpart C regarding accessibility to the handicapped of mass transit facilities renovated with federal funds and, in addition, had failed to make the required "special efforts" to provide transportation services. The defendants answered that they had complied with the "special efforts" requirements of 49 C.F.R. Sec. 27.77 and had thereby fully satisfied their obligations under federal law to provide transportation usable by handicapped persons.
 
 
 16
 The plaintiffs moved to have the case certified as a class action, pursuant to Fed.R.Civ.P. 23(a) and (b) (2) on behalf of mobility-disabled persons who are or will be denied access to and effective use of the mass transit facilities which the City owns and which were altered with the use of federal financial assistance. The defendants moved for summary judgment and the plaintiffs filed a cross-motion for partial summary judgment.
 
 
 17
 The district court certified the class, granted the defendant's motion for summary judgment, and denied the plaintiffs' motion. The district court determined that there were no issues of fact regarding the City's expenditures for paratransit since 1981. The court further determined that those expenditures satisfied the "special efforts" requirements of the regulations, resulting in the defendants having satisfied the requirements of the statute as a matter of law.
 
 
 18
 On appeal, the plaintiffs do not challenge the district court's determination regarding the defendants' compliance with the "special efforts" requirements. The plaintiffs instead argue that "special efforts" are no defense to their claim that the defendants failed, during renovations, to make the Columbia Avenue station usable by mobility-disabled persons in accordance with the DOT regulations.
 
 
 19
 Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On review the appellate court is required to apply the same test the district court should have utilized initially. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976). cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In determining the applicable law, we must first examine the district court's interpretation of the DOT regulations. This is a question of law subject to plenary review. Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 290 (3d Cir.1985). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.III.
 
 
 20
 The district court relied primarily on its interpretation of the requirement in Subpart C, that "[t]he provisions of this subpart should be interpreted in a manner that will make them consistent with the provisions of subparts D and E. In the case of apparent conflict, the provisions of subparts D and E shall prevail." 49 C.F.R. Sec. 27.61 (1981). The district court interpreted this language to mean that, "for those programs which actually provide mass transportation service to the mobility-impaired, the specific provisions of Subpart D govern, and not the more general requirements of Subpart C." The court apparently also relied upon the letter to the City from UMTA which expressed the opinion that, having filed its certification of compliance with the "special efforts" requirements, the City was not required to include elevators in its plan for the Columbia Avenue renovation. The district court decided that the defendants' decision to omit an elevator, ramp, lift or other special mechanism for persons in wheelchairs from the planned renovation of the Columbia Avenue subway station, which serves Temple University in Philadelphia, satisfied the requirements of the relevant statutes as interpreted in the DOT regulations.
 
 
 21
 During the pendency of this appeal, a second suit was filed in the same district court whose order we now review in this case, challenging once again the City's exclusion of an elevator from the Columbia Avenue subway station. Eastern Paralyzed Veterans Association of Pennsylvania, Inc., et al. v. Dudley R. Sykes, et al., No. 86-6797 (E.D.Pa. filed June 4, 1987). The district court requested that the DOT submit its interpretation of 49 C.F.R. Part 27 as applicable to the Columbia Avenue station. The DOT complied and, pursuant to Fed.R.App.P. 29, filed a copy of that interpretation as a memorandum amici curiae in this appeal.
 
 
 22
 In requesting that we take judicial notice of its interpretation, the DOT points to the central importance to recipients of federal funds of uniformity and predictability in interpretation of these regulations. We agree and thus will review the DOT's proffered interpretation in accordance with the normal standard. An agency's interpretation of its own regulations is owed considerable deference. Presinzano v. Hoffman-La Roche, Inc., 726 F.2d 105 (3d Cir.1984). In construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. U.S. v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); see also Director, Office of Workers' Compensation Programs, United States Dept. of Labor v. Mangifest, 826 F.2d 1318, 1325 (3d Cir.1987).
 
 
 23
 The regulations at issue here were enacted pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, upon which plaintiffs base their claim. Section 504 provides that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance." This section "is both ambiguous and lacking in specifics." Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority, 718 F.2d 490, 494 (1st Cir.1983). Consequently, other courts have suggested that the relevant federal agency and not the court has the chief responsibility to determine what Section 504 requires of recipients of federal funds in accommodating the needs of disabled persons. Id., citing Southeastern Community College v. Davis, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370-71, 60 L.Ed.2d 980 (1983).
 
 
 24
 The DOT interpretation is that Subparts C and D of 49 C.F.R. Part 27 establish separate, independent criteria and, in order to comply with the DOT regulations and Section 504 of the Rehabilitation Act, the requirements set forth in both subparts must be satisfied.
 
 
 25
 The DOT argues that the 1981 regulations replacing Subpart E with Sec. 27.77 in Subpart D did not require, as had Subpart E, that mass transportation services be made fully accessible. Rather it required that recipients of federal funds certify that "special efforts ... to provide transportation that handicapped persons, including wheelchair users and semiambulatory persons, can use" were being made. 49 C.F.R. 27.77(a)(1) (1981). Subparagraph (a)(4) of 27.77 stated, however, that:
 
 
 26
 compliance with such certification shall be deemed to constitute compliance with section 504 of the Rehabilitation Act of 1973, section 16(a) of the Urban Mass Transportation Act of 1964, as amended, and section 165(b) of the Federal-Aid Highway Act of 1973, insofar as these statutes relate to the provision of mass transportation service that handicapped persons can use.
 
 
 27
 49 C.F.R. 27.77(a)(4) (1981) (emphasis added). In the section of the preamble to the 1981 regulations explaining 27.77, the DOT further clarified this point, stating that:
 
 
 28
 compliance with the certification under this subsection shall be deemed compliance with section 504, section 16 and section 165. Compliance in this context refers only to compliance with the obligation of recipients to ensure the provision of transportation service that handicapped persons can use (and planning for such transportation). The certificate does not stand for compliance with other requirements. ...
 
 
 29
 46 Fed.Reg. 37488, 37490 (1981) (emphasis added).
 
 
 30
 The DOT's intention is clear--compliance with 49 C.F.R. 27.77, regarding accessibility of transportation services, does not release federal fund recipients from compliance with Subpart C's requirements regarding the accessibility of transportation facilities.
 
 
 31
 The district court reached a contrary conclusion, based upon its interpretation of the requirement, in Subpart C, that "[t]he provisions of this subpart should be interpreted in a manner that will make them consistent with the provisions of subparts D and E. In the case of apparent conflict, the provisions of subparts D and E shall prevail." 49 C.F.R. 27.61 (1981). However, the DOT interprets this language as referring to conflicts between the subparts requirements with regard to facilities, not services. For example, if, in the context of a question concerning the accessibility of rapid rail transit, a conflict were to arise between Subpart C's more general requirements with regard to accessibility of airport facilities and Subpart E's more specific requirements with regard to accessibility of facilities, Subpart C provided that the provisions in Subpart E would prevail. Id. Likewise, if, in the context of a question concerning the accessibility of an airport terminal, a conflict with regard to accessibility of facilities and Subpart D's more specific requirements with regard to accessibility of facilities, Subpart C provided that the provisions in Subpart D would prevail. Id. In short, for a conflict between the Subparts to arise, the dispute must involve a question regarding accessibility of facilities, not services.[6]
 
 
 32
 In response to the ruling of the Court of Appeals for the D.C. Circuit in APTA, supra, the DOT deleted Subpart E, replacing it with a new paragraph 27.77 in Subpart D. 46 Fed.Reg. 37488, 37489 (1981). Paragraph 27.77 simply established program-specific requirements for accessibility of services for the handicapped. Id. at 37492. This action effectively eliminated any specific program requirements regarding accessibility of facilities for mass transportation modes, such as rapid rail services, which originally were addressed in Subpart E. Under the 1981 regulations, the only "conflict," as that term is used in Subpart C, which could then arise, which would require resolution by deference to Subpart D, involves disputes concerning the accessibility of facilities in airports, railroads and highways, i.e., those specific transportation modes covered by Subpart D.[7]
 
 
 33
 We find nothing clearly erroneous or inconsistent in the DOT's interpretation that Subparts C and D of the regulation, 49 C.F.R. Part 27, established separate, independent criteria for compliance with the regulation, and both sets of requirements must be satisfied. Consequently the DOT's interpretation is controlling.
 
 IV.
 
 34
 We turn now to Subpart C of the DOT regulations which govern this dispute. Subpart C requires that:
 
 
 35
 Each [new] facility or part of a facility constructed by, on behalf of, or for the use of a recipient [of federal funds] shall be designed, constructed, and operated in a manner so that the facility or part of the facility is accessible to and usable by handicapped persons....
 
 
 36
 49 C.F.R. Sec. 27.67(a) (1981).
 
 
 37
 Each facility or part of a facility which is altered by, on behalf of, or for use of a recipient ... in a manner that affects or could affect the accessibility of the facility or part of the facility shall, to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by handicapped persons.
 
 
 38
 49 C.F.R. 27.67(b) (1981).
 
 
 39
 Subparagraph 27.67(d) of the DOT's regulation states that:
 
 
 40
 Design, construction or alteration of fixed facilities in paragraphs (a) and (b) of this section shall be in accordance with the minimum standards in the "American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by the Physically Handicapped," published by ANSI, Inc. (ANSI A117.1-1961 (R1971)), which is incorporated by reference in this part.
 
 29 C.F.R. 27.67(d) (1981).[8]
 V.
 
 41
 The governing substantive law identifies which facts are material for purposes of summary judgment. We must now determine whether, in light of the DOT's interpretation of its regulations, the undisputed facts show that either the defendants or the plaintiffs were entitled to judgment as a matter of law. We look to the plaintiffs' burden at trial, which will be to prove that:
 
 
 42
 (1) the City, with federal funding, constructed a new facility or part of a facility, or altered a facility in a manner that affects or could affect its accessibility; and
 
 
 43
 (2) the new construction "is accessible to and usable by handicapped persons" or the alterations are "to the maximum extent feasible ... readily accessible to and usable by handicapped persons" as insured by the ANSI [American National Standards Institute] standards for accessibility.
 
 
 44
 In the defendant's motion for summary judgment, the defendants chose to stand on the legal principles which they advocated to be applicable. They relied upon the asserted absence of factual issues concerning their compliance with the "special efforts" provisions. They made no representations as to the state of the evidence with regard to their compliance with Subsection C dealing with facilities.
 
 
 45
 We have determined that compliance with the "special efforts" requirements does not constitute a defense to noncompliance with Subpart C. Therefore summary judgment for the defendants was entered in error, and we will vacate the order of the district court.
 
 
 46
 The plaintiffs' cross-moved for summary judgment asserting that there were no issues of material fact and that the plaintiffs were entitled to judgment as a matter of law, declaring that the City has a duty under Subpart C to make the Columbia Avenue station accessible to handicapped individuals despite its compliance with the "special efforts" requirements. We turn now to determine whether there are disputed issues of fact bearing on the City's fulfillment of any obligations under Subpart C in its renovation of the Columbia Avenue station.
 
 
 47
 We have carefully reviewed the plaintiffs' submissions in support of their motion for summary judgment. Several photographs depicting the renovated areas, which were submitted with plaintiffs' cross-motion, have enhanced our understanding of the nature and extent of the station rehabilitation project. The defendants have adduced nothing to controvert the plaintiffs' evidence.
 
 
 48
 It is undisputed that, with the assistance of federal funding, the City either partially or entirely reconstructed one stairway leading from the street to the northbound terminal and two stairways leading from the street to the southbound terminal at the Columbia Avenue station, and that no means of access was provided at these locations for persons in wheelchairs. On the northeast side of the station, an entirely new headhouse was constructed, two new stairways were built, and an escalator was installed, all providing access to the northbound terminal, again with no provision for persons in wheelchairs.
 
 
 49
 The plaintiffs argue that the altered portions are "entrances" to the station. The ANSI standard does not define the term "entrance". However, Section 5.2 of the 1971 ANSI standard provides:
 
 
 50
 5.2.1. At least one primary entrance to each building shall be usable by individuals in wheelchairs.
 
 
 51
 5.2.2 At least one entrance usable by individuals in wheelchairs shall be on a level that would make the elevators accessible.
 
 
 52
 The plaintiffs argue that these are the relevant standards and that the defendants are not in compliance with them.
 
 
 53
 The defendants and the amicus curiae argue that the altered portion or item of the station is a staircase, and that consequently the only relevant ANSI standards are those applicable to stairs. In the preamble to the final rule implementing the 1979 regulation, the DOT explained:
 
 
 54
 It should be noted that [49 C.F.R. 27.67(b) ] applies only to the altered portion or item of a fixed facility. Thus, a stair renovation to meet the ANSI standard [American National Standards Institute] does not impose a requirement for elevator installation since the elevator is not within the scope of the stair alteration project.
 
 
 55
 49 C.F.R. Part 27 (1979).
 
 
 56
 The DOT argues in its amicus brief that nothing in the ANSI standard suggests that, in the context of a subway station, the stairs or escalators inside a facility leading to the street level be considered an "entrance" for the purpose of determining the relevant standard. We think it is beyond cavil that the areas in question are entrances to the station. However, we think these arguments miss the mark. It is unimportant to define whether the altered portion of a facility is itself an "entrance," "a stairway," or both. Instead the relevant question is to what extent any alterations to a facility provide an opportunity to make the facility more accessible to handicapped persons.[9] The central question is what degree of accessibility, as defined by ANSI standards, becomes "feasible" within the scope of alterations.
 
 
 57
 It is beyond dispute that the substantial reconstruction of the northeast entrance to the northbound terminal of the Columbia Avenue state "altered" the station "in a manner that affects or could affect the accessibility of the facility." 49 C.F.R. Sec. 27.67(b). The cumulative effect of the applicable regulations is to require that the alteration be effected "to the maximum extent feasible," id., "in accordance with the minimum standards in the 'American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped,' published by ANSI, Inc....' " 49 C.F.R. Sec. 27.67(d).
 
 
 58
 Based on the record before us, there can be no question that it was "feasible" to effect the alterations to the northeast entrance in such a manner as to satisfy the ANSI standard requiring that "... at least one primary entrance to each building shall be usable by individuals in wheelchairs." ANSI A 117.1-1961 (R-1971), at Sec. 5.2.1.[10] We note that the City's original proposal, which was submitted to UMTA in order to obtain prior approval of federal funding for the renovation, included a plan for construction of an elevator shaft to service the northbound platform. Therefore we find that the plaintiffs are entitled to partial summary judgment establishing the defendant's obligation to make the northeast entrance to the northbound terminal of the Columbia Avenue station usable by persons in wheelchairs.
 
 
 59
 It is not entirely clear from the evidence of record whether the renovation of the other entrances which were serviced only by stairs amounted to normal maintenance of existing stairs or constituted an "alteration" of the Columbia Avenue station substantial enough, as the plaintiffs claim, to afford an opportunity to make one entrance to the southbound terminal usable by persons in wheelchairs. Consequently we will remand for determination at trial of the maximum extent to which it was feasible, if at all, to incorporate ANSI accessibility standards in accordance with 49 C.F.R. Sec. 27.67(b).
 
 VI.
 
 60
 In accordance with the foregoing we will vacate the order granting summary judgment in favor of the defendants and reverse the order denying partial summary judgment for the plaintiffs. We will remand this case to the district court for entry of an order granting partial summary judgment in favor of the plaintiffs and for further proceedings consistent with this opinion.
 
 
 
 [1]
 These regulations were enacted pursuant to Section 16(a) of the Urban Mass Transportation Act, 49 U.S.C. Sec. 1612(a), Section 165(b) of the Federal-Aid Highway Act, 23 U.S.C. Sec. 142 note and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. 44 Fed.Reg. 31442 (1979). These regulations superseded the 1976 Urban Mass Transportation Administration ("UMTA") regulations, codified at 49 C.F.R. Part 609. Id. at 31454
 
 
 [2]
 The Columbia Avenue subway station serves Temple University. Disabled In Action v. Sykes, Civil Action No. 86-2316 Memorandum Opinion, p. 1 (E.D.Pa.1986)
 
 
 [3]
 For example, if recipients of federal funds certified that they had established paratransit services for wheelchair users and semi-ambulatory handicapped persons involving the expenditure of an average annual dollar amount equivalent to a minimum of 3.5 percent of the financial assistance received under section 5 of the Urban Mass Transit Act, 49 U.S.C. Sec. 1604, they were deemed to be in compliance with Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, Section 16 of the Urban Mass Transit Act of 1964, 49 U.S.C. Sec. 1612, and Section 165 of the Federal-Aid Highway Act of 1973, 23 U.S.C. Sec. 142 note, with regard to making services accessible. 46 Fed.Reg. 37488, 37492-93 (1981), codified at 49 C.F.R. 27.77(a)(1), (a)(4), Appendix A
 
 
 [4]
 The City of Philadelphia owns the Broad Street Line, including the Columbia Avenue Station. SEPTA leases the city-owned trains and facilities, and is responsible for the possession, operation and maintenance of the Broad Street Line. The City planned the project in conjunction with SEPTA
 
 
 [5]
 Section 504 affords a private right of action to handicapped persons who are excluded from federally funded programs. N.A.A.C.P. v. The Medical Center Inc., 599 F.2d 1247, 1258-59 (3d Cir.1979); see also, Smith v. U.S. Postal Service, 766 F.2d 205 (6th Cir.1985); Carter v. Orleans Parish Public Schools, 725 F.2d 261 (5th Cir.1981); Doe v. New York University, 666 F.2d 761 (2nd Cir.1981); Helms v. McDaniel, 657 F.2d 800 (11th Cir.1981), rehearing denied 664 F.2d 291, cert. denied, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); Lloyd v. Regional Transp. Authority, 548 F.2d 1277 (7th Cir.1977)
 The plaintiffs also claimed that the defendants had violated section 165 of the Federal-Aid Highways Act, 23 U.S.C. Sec. 142 note, section 16(a) of the Urban Mass Transportation Act, as amended by section 317(c) of the Surface Transportation Assistance Act of 1982, 49 U.S.C. Sec. 1612(a), (d), the regulations applicable to these statutes, and 42 U.S.C. Sec. 1983. We need not reach those contentions in light of our disposition under Section 504 of the Rehabilitation Act.
 
 
 [6]
 It was not possible to have a conflict between Subpart C and Subparts D and E regarding accessibility of services since Subpart C did not address accessibility of services. See 49 C.F.R. Secs. 27.61 through 27.67
 
 
 [7]
 An anomalous situation was created by revocation of Subpart E without substantive modification of Subpart C. Subpart C requires that facilities which provide access to mass transportation services be made accessible under certain circumstances without a concomitant requirement that the services themselves be made accessible. However, the Architectural Barriers Act of 1968, as amended, 42 U.S.C. 4151 et seq., ("the Barriers Act") and the regulations promulgated thereunder by the General Services Administration ("GSA"), 41 C.F.R. Subpart 101-19.6, prescribe accessibility standards for the design, construction and alteration of "buildings." See 4 Fed.Reg. 31442, 314590 (1979). New fixed facilities and alterations to existing fixed facilities which are funded by a grant or loan from the DOT must comply with the GSA regulation. Id. The DOT intended that 49 C.F.R. 27.67 reflect the basic requirement of GSA's regulation. 44 Fed.Reg. 31442, 31450 (1979). Therefore, the DOT retained Subpart C's requirement that those portions of mass transportation facilities that are undergoing renovation must be made accessible to the maximum extent feasible. See 49 C.F.R. 27.67(b)
 
 
 [8]
 This regulation refers to the 1971 ANSI standard and was never amended toincorporate the ANSI standard as revised in 1981
 
 
 [9]
 In the preamble to the final rule, the DOT explained:
 [49 C.F.R. Sec. 27.67(b) ] is based on the belief that alterations present opportunities to design and construct the altered portion or item in an accessible fashion.... The basic requirement in [49 C.F.R. Sec. 27.67(b) ] is simply to take the opportunities afforded by the alteration and, to the maximum extent feasible, use the alteration to make the facility accessible. Thus, normal maintenance may take place in practically all cases without generating an accessibility requirement. 44 Fed.Reg. 31442, 31449.
 
 
 [10]
 We think subsection 5.2.2 providing for access to elevators refers to existing elevators and is thus not applicable here