

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-1995

# McDonald v Comm of PA

Precedential or Non-Precedential:

Docket 95-3005

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"McDonald v Comm of PA" (1995). *1995 Decisions*. Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 95-3005
_____

BONITA McDONALD,
                                    Appellant
                    v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF
PUBLIC WELFARE, POLK CENTER,
                                    Appellee
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 94-cv-00009E)
_____

Submitted Pursuant to Third Circuit Rule LAR 34.1(a)
June 30, 1995
Before:  HUTCHINSON, ROTH, and WEIS, Circuit Judges

(Opinion filed August 4, 1995)
_____

Michael L. Rosenfield, Esquire
1808 Law & Finance Building
Pittsburgh, PA  15219

Attorney for Appellant

Gloria A. Tischuk, Esquire
 Deputy Attorney General
Calvin R. Koons, Esquire
 Senior Deputy Attorney General
John G. Knorr, III, Esquire
 Chief Deputy Attorney General
 Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
4th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

Attorneys for Appellee

1

---

OPINION OF THE COURT

---

WEIS, Circuit Judge.

Plaintiff alleges a discriminatory discharge from employment caused by her inability to work for about two months while recuperating from surgery. The district court concluded that the complaint failed to state a claim under the Americans With Disabilities Act and the Rehabilitation Act. We agree and will affirm.

The relevant facts are those alleged in the plaintiff's complaint. On September 8, 1992, plaintiff was hired as a charge nurse at the Polk Center in Venango County, a residential institution for the mentally retarded operated by the Pennsylvania Department of Public Welfare. On December 24, 1992, during working hours, plaintiff became disabled because of severe abdominal pain. She was admitted to a hospital on the following day and underwent surgery on December 31, 1992.

On January 14, 1993, plaintiff requested that she be placed on unpaid sick leave until February 14, 1993, after which her physician reported that she could return to work. Polk Center denied her request because she was still a probationary employee and, under the terms of the collective bargaining agreement, was not eligible for extended sick leave. Because she was unable to attend to her duties, the Center discharged plaintiff as of December 31, 1992.

Plaintiff filed claims with the Pennsylvania Human Relations Commission and the EEOC, asserting that Polk Center had discriminated against her because of the disability resulting from her surgery. In due course, the EEOC issued a right to sue letter and plaintiff filed her complaint in the district court alleging that the defendant had violated the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797(b), and the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, §§ 951-963.

Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that the complaint failed to state a claim. Granting the defendant's motion, the district court dismissed the federal counts with prejudice and declined to exercise supplemental jurisdiction over the state law cause of action.

The district court reasoned that the Disabilities and Rehabilitation Acts did not apply to the transitory disability that plaintiff had suffered, and that she was not "otherwise qualified" to work during the period in question. As an alternative holding, the court concluded that plaintiff was discharged because of her probationary employee status and that the Disabilities and Rehabilitation Acts hence were not applicable.

In an appeal from an order dismissing a complaint for failure to state a claim, we accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn

3

from them.  Our scope of review is plenary.  <u>Unger v. National Residents Matching Program</u>, 928 F.2d 1392, 1394 (3d Cir. 1991).  Plaintiff did not seek to amend her complaint and does not request that relief on this appeal.  <u>See</u> <u>id</u>. at 1401.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been termed "the civil rights bill of the disabled."  <u>Americans Disabled For Accessible Pub. Transp. (ADAPT) v. Skinner</u>, 881 F.2d 1184, 1187 (3d Cir. 1989) (en banc).  The statutory language and the regulations adopted to implement the legislation have proved to be ambiguous and, as such, fruitful sources of litigation.  <u>See</u> <u>Disabled in Action of Pennsylvania v. Sykes</u>, 833 F.2d 1113, 1117 (3d Cir. 1987).

Partially because it recognized the problems caused by inconsistent interpretations of the Rehabilitation Act, and intending to broaden coverage, Congress in 1990 enacted the Disabilities Act.  We reviewed the tortuous path of this legislation in <u>Helen L. v. DiDario</u>, 46 F.3d 325, 330-31 (3d Cir. 1995), <u>petition for cert. filed sub. nom.</u> <u>Pennsylvania Secretary of Pub. Welfare v. Idell S.</u>, 63 U.S.L.W. 3861 (U.S. May 25, 1995) (No. 94-1946), and need not repeat that discussion here.  Further amplification may be found in the legislative history reported in 1990 U.S.C.C.A.N. 267-602, in S. Rep. No. 116, 101st Sess. (1989), and in a series of articles published in Volume 64, Number 2 of the <u>Temple Law Review</u>.

These sources provide a helpful background for appreciating the purpose of the legislation.  However, they do not discuss the precise issue presented by this case -- whether a

4

disabling, but transitory, physical or mental condition is within the ambit of the Disabilities and Rehabilitation Acts.

Congress made clear its intention that identical standards were to be applied to both Acts. 42 U.S.C. § 12117(b) provided that enforcement agencies were to develop procedures to ensure that complaints are resolved in the same manner so as to avoid duplication of effort and imposition of inconsistent or conflicting standards under the Disabilities and Rehabilitation Acts. Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same. Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995).

The legislative history demonstrates that the congressional committees drafting the Disabilities Act were conversant with regulations previously adopted to implement section 504 of the Rehabilitation Act. Indeed, in certain aspects the committee reports borrowed language from some of these regulations in explaining the meaning of the proposed Disabilities Act. See, e.g., H.R. Rep. No. 485(II), 101st Cong., 2d Sess. 50-52, 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332-34, 337; Senate Report 116, supra at 21, 22. Consequently, the regulations so utilized have more than usual force in providing guidance for interpretation of the Act. The Committee's use of those regulations as they applied to the Rehabilitation Act in a sense assimilated them as a means of understanding the Disabilities Act.

5

The Rehabilitation Act provides that anyone receiving federal funds may not discriminate against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). The Disabilities Act prohibits discrimination in employment "against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a).

The two statutes have closely parallel definitions of disability. The Rehabilitation Act terms an individual with a disability as one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(8)(B). Under the Disabilities Act, a disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2).

29 C.F.R. § 1630.2(i) includes "working" as a major life activity. Section 1630.2(j)(2) lists several factors to be considered "in determining whether an individual is substantially limited in a major life activity," including:

"(i)      The nature and severity of the impairment;

(ii)      The duration or expected duration of the impairment; and

(iii)      The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

By way of illustration, the EEOC's "interpretative guidance" in the appendix to the regulation points out that a broken leg that takes eight weeks to heal is an impairment of

6

fairly brief duration.  "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.  Such limitations may include . . . broken limbs, . . . appendicitis, and influenza."  29 C.F.R. pt. 1630 app.

Similar regulations, promulgated pursuant to the Rehabilitation Act and in effect before the enactment of the Disabilities Act, may be found in 45 C.F.R. § 84.3(j); 45 C.F.R. pt. 84 app. A; 34 C.F.R. § 104.3; 34 C.F.R. pt. 104 app. A.

The Report of the Senate Committee on Labor and Human Resources states that:  "Persons with minor, trivial impairments, such as a simple infected finger are not impaired in a major life activity."  Senate Report 116, supra at 23.  See also House Report 485(II), supra at 52.

In Bolton v. Scrivner, Inc., 36 F.3d 939, 943 (10th Cir. 1994), the Court of Appeals concluded that the legislative history of the ADA demonstrates that Congress intended that the caselaw developed under the Rehabilitation Act be generally applicable to the term `disability' as used in the Disabilities Act.  See also Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995).

An example of that guidance is found in Evans v. City of Dallas, 861 F.2d 846, 852-53 (5th Cir. 1988), where a worker discharged after excessive absenteeism attributable to a knee injury that required surgery was held not to be "disabled" within the terms of the Rehabilitation Act.  The Court of Appeals concluded that the Act contemplates an impairment of a permanent

7

nature.  Id. at 853.  Similarly, the Court in Vande Zande, 44 F.3d at 544, applying the Disabilities Act, commented: "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."  See also de la Torres v. Bolger, 781 F.2d 1134, 1137 (5th Cir. 1986); Stevens v. Stubbs, 576 F. Supp. 1409, 1414 (N.D. Ga. 1983).

Against this background of applicable law, it is clear that the plaintiff in the case before us cannot qualify for relief under the Disabilities Act or the Rehabilitation Act.  As the complaint reveals, her inability to work caused by the surgery was of limited duration.  She entered the hospital on December 25, 1992, and would have been able to return to her duties at Polk on February 15, 1993, a period of less than two months.  Although she was incapacitated for these weeks, her inability to work was not permanent, nor for such an extended time as to be of the type contemplated by the statutes she cites.

To apply the Rehabilitation and Disabilities Acts to circumstances such as those presented here would be a massive expansion of the legislation and far beyond what Congress intended.  In the absence of statutory language, or even legislative history, indicating that the Acts are to cover an impairment of such limited duration, and not within the general concept of handicap, we cannot conclude that plaintiff was entitled to the benefits of the legislation.

As an alternative ground for dismissal, the district court decided that plaintiff was not "otherwise qualified." Plaintiff argues that "with accommodation" in the form of a leave

without pay, she would have been qualified. However, because plaintiff was not "disabled" as that condition is contemplated by the Rehabilitation and Disabilities Acts, Polk was not required to provide accommodation.

This conclusion is consistent with the statute's language and case law. The Rehabilitation Act bars discrimination against "otherwise qualified individuals," but does not define that phrase. The Supreme Court, however, has provided guidance. In Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979), the Court said: "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of [her] handicap." In another case, the Court noted: "In the employment context, an otherwise qualified person is one who can perform `the essential functions' of the job in question." School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 287 n.17 (1987).

The Disabilities Act defines "a qualified individual with a disability" as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Some cases have held that in certain situations an employer may be required to grant extended leave without pay to disabled employees. See Fuller v. Frank, 916 F.2d 558 (9th Cir. 1990) (alcoholic federal employee); Rodgers v. Lehman, 869 F.2d 253 (4th Cir. 1989) (same); Kimbro v. Atlantic Richfield Co., 889 F.2d 869 (9th Cir. 1989) (analogous state statute). Rodgers and

9

Fuller were cases covered by regulations promulgated under section 501(b) of the Rehabilitation Act, which requires federal agencies to adopt affirmative action programs for the disabled. See Fuller, 916 F.2d at 561 & n.3. Moreover, in Fuller, the Court assumed arguendo that the employee was otherwise qualified. Id. at 561 n.5. See also House Report 485(II), supra at 63; 29 C.F.R. pt. 32 app. A (Department of Labor suggestions: 29 C.F.R. pt. 1630 app. (EEOC "interpretive guidance").

On the other hand, several courts have held that an employee with a history of sporadic, unpredictable absences may not be "otherwise qualified." Tyndall v. National Educ. Ctrs., Inc. of Cal., 31 F.3d 209 (4th Cir. 1994); Carr v. Reno, 23 F.3d 525 (D.C. Cir. 1994); Jackson v. Veterans Admin., 22 F.3d 277 (11th Cir. 1994), cert. dismissed, 115 S. Ct. 657 (1994); Magel v. Federal Reserve Bank of Phila., 776 F. Supp. 200 (E.D. Pa. 1991), aff'd 5 F.3d 1490 (3d Cir. 1993); Santiago v. Temple Univ., 739 F. Supp. 974 (E.D. Pa. 1990), aff'd, 928 F.2d 396 (3d Cir. 1991).

In Myers, 50 F.3d at 283, a case involving a county employee, the Court pointed out that an employer is not required to wait for an indefinite period to determine if an accommodation is achieving its intended effect. "[R]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." Id.

Although some case law might support the plaintiff's position that an unpaid leave of absence is an appropriate

10

accommodation in some circumstances, it does not aid her here because she fails to meet the threshold test of disability.  The Rehabilitation Act and the Disabilities Act do not apply to the transient, nonpermanent condition that she experienced, and consequently, the notion of accommodation under the statutes does not come into play.  We, therefore, do not decide that issue.

Accordingly, the judgment of the district court will be affirmed.