NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3173

_____

ERNEST N. JOHNSON,
                    Appellant

v.

AMTRAK

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 08-4986)
District Judge: Honorable Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
June 11, 2010

_____

Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges

(Opinion Filed:August 17, 2010)

_____

OPINION

_____

GREENAWAY, JR., Circuit Judge

Appellant Ernest N. Johnson ("Johnson") appeals from the final order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of Appellee National Railroad Passenger Corporation ("Amtrak") on his claims of discrimination, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("RA"). Specifically, Johnson claims that on a cross-country Amtrak train trip, from Philadelphia, Pennsylvania to Albuquerque, New Mexico, his medical needs were not accommodated, as is required by federal law. We find no merit to Johnson's contentions, and no error with the District Court's determinations. We will affirm. [1]

## I. BACKGROUND

A. Johnson's Trip to Albuquerque

In or about 2006, Johnson purchased a round trip ticket from Philadelphia to Albuquerque, for a personal vacation. At the time of his trip, Johnson was fifty-eight years old and suffered from diabetes and ulcerative colitis. When purchasing the tickets, Johnson informed the Amtrak ticket agent of these conditions. He also told the ticket

---

[1] In its brief, Amtrak requested "that this Court affirm the District Court's judgment granting its motion for summary judgment and dismissing [Johnson's] complaint in its entirety." Appellee's Br. 54. Below, the District Court did, in fact, write "this claim is dismissed." A 20. The resolution of a motion for summary judgment, however, does not lead to a dismissal of the complaint, only to the grant or denial of summary judgment." See Cheminor Drugs, Ltd., v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999) ("[T]he grant of summary judgment and the dismissal of the complaint are inconsistent ...."). Thus, we affirm to the extent that Amtrak seeks an affirmance of the District Court's order granting summary judgment.

agent that he suffered from back, neck, and knee problems.[2] He requested "handicap" accommodations, including a sleeper compartment with an attached bathroom, meal service, and luggage assistance service.

Although Johnson requested a sleeper compartment with an attached bathroom for every segment of his trip, sleeper compartments were not available for the Philadelphia to Pittsburgh leg of his trip to Albuquerque. On the return trip, no sleeper compartment was available for the New York to Philadelphia leg.[3] Johnson was aware of this, and the record reveals that he was not charged for sleeper compartment accommodations for those legs of his trip. As a "mobility impaired passenger," Johnson qualified for, and was given, Amtrak's 15% discount off of his rail fare and sleeper accommodation charges. [4]

On May 3, 2006, Johnson embarked on the first leg of his Amtrak trip from Philadelphia to Albuquerque. Track damage on the Philadelphia to Pittsburgh line forced Amtrak to reroute Johnson and its other passengers via bus from Harrisburg,

---

Johnson failed to mention his back, neck, and knee problems in his Complaint, or in responses to interrogatories. The District Court did not err in limiting Johnson's claim of disability to diabetes and colitis. See Krouse v. Amer. Sterilizer Co., 126 F.3d 494, 499 (3d Cir. 1997) ("a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quotation marks omitted). Nonetheless, as discussed *infra*, Johnson failed to produce evidence that any of his medical problems, including his back, neck, and knee injuries, substantially limit his ability to engage in any major life activity.

Instead, Johnson's tickets indicate that he reserved an "access coach" ticket for the Philadelphia to Pittsburgh and New York to Philadelphia legs of his trip. This fare class entitled him to more space than a regular seat.

Johnson asserts that he never received this discount. SA 99.

3

Pennsylvania. There was no meal service on the bus, and passengers had to use a shared bathroom. Johnson ate his meals at a rest stop and a restaurant in Pittsburgh.

On the uninterrupted Pittsburgh to Chicago and Chicago to Albuquerque legs of his trip, Johnson received his paid-for sleeper compartment, and had access to a private bathroom and food. During his stopover in Chicago, Johnson also ate a meal at a restaurant outside of the train station.

Once in Albuquerque, Johnson vacationed for one week without physical problem or complaint. He rented a car, ate at restaurants, and went sightseeing. Johnson was scheduled to depart Albuquerque on May 12, 2006, but an Amtrak accident delayed his scheduled departure. Amtrak informed Johnson of the delay by telephone, and advised him to call a customer service line for trip status updates. Johnson, however, asserts that he was merely directed to arrive at the station at a particular time.

After Johnson arrived at the train station, an Amtrak representative informed him that the train was delayed. In addition, the train station's restroom was out of order, so all delayed passengers were required to use nearby facilities. Johnson used these facilities approximately three or four times.

During the delay, Johnson began to feel ill. He reported his symptoms to an Amtrak manager, and requested accommodations, such as a hotel room for the duration of the delay. Amtrak did not offer Johnson a hotel room. Amtrak asserts that it, instead, offered to seek medical assistance for Johnson. Amtrak also told Johnson about nearby restaurants, which it claims Johnson refused because he was not a fan of the Mexican fare

that those eateries offered. Amtrak also offered Johnson a refund and a taxi to the airport, which was also refused. Johnson disputes that Amtrak made any of these offers, and stated that the manager "rejected everything I was asking him for." SA 113.

After a twelve-hour delay, Johnson boarded the train to Chicago. He received his paid-for sleeper compartment and breakfast and lunch service. Johnson complained of stomach problems, light-headedness, and rectal bleeding during the trip to Chicago. On the Chicago to New York leg of his trip, Johnson similarly received a sleeper compartment with a private bathroom. Johnson continued to feel ill throughout the remainder of the trip to Philadelphia.

B.      Johnson's Physical Health

At the time of Johnson's Amtrak trip, his diabetes treatment required oral medication, a regulated diet, regular blood sugar checks, and the use of special equipment to regulate his diabetic condition. Johnson follows no specific diet plan, aside from eating a nutritious diet at specific times during the day. Johnson is able to drive and is able to travel for pleasure. He takes his medication and uses the restroom without assistance. Johnson's diabetes and colitis have limited his ability to participate in hobbies, such as fishing and going to the movies. Johnson is also unable to participate in sports because of his back, neck, and knee problems.[5] Johnson complained, without

---

Johnson further expressed that his "whole life has changed" because of his medical

(Cont.)

(Cont.)

specifics, that his health deteriorated as a result of the Amtrak trip.

C.      Johnson's Lawsuit Against Amtrak

Johnson, through his attorney, contacted Amtrak to complain that he did not receive the special accommodations for which he had paid. As a result, he requested a refund of the total cost of his round-trip train fare. After an investigation, Amtrak concluded that Johnson had received the appropriate sleeper compartments for which he had paid. Nonetheless, Amtrak extended an apology for the delayed service, and gave Johnson a $300.00 voucher, redeemable for future travel on Amtrak.[6]

On October 21, 2008, Johnson filed a Complaint in the Court of Common Pleas of Philadelphia County. Amtrak removed the suit to the United States District Court for the Eastern District of Pennsylvania. Johnson asserted ADA and RA violations, based on Amtrak's refusal to provide paid-for special accommodations during his May 2006 trip. Johnson further claimed that Amtrak routinely "overbooks its special accommodations in order to collect extra money and then deliberately denies those special accommodations to handicapped individuals such as [Johnson], who need those special accommodations in order to travel comfortably …." A 28.

_____

problems, but, when asked, was unable to pinpoint the exact ways in which his life was different following the onset of his diabetes and colitis. SA 92. Pressed further, Johnson admitted that his sex life had "changed." Id. Johnson also stated that he did "nothing around [his] house," referencing chores, but did not attribute this to his medical problems. Id.

Johnson indicated that he has already used all or part of the voucher on a subsequent Amtrak trip.

The crux of Johnson's argument is that Amtrak discriminated against him by: (1) not providing him with a sleeper compartment and forcing him to use "regular accommodations" on the train and bus during the Philadelphia to Pittsburgh leg of his trip, and (2) failing to provide him with a hotel room or other adequate accommodations during the delay in Albuquerque. [7]

Amtrak moved for summary judgment on several grounds, including Johnson's purported failure to demonstrate a prima facie case of discrimination. The District Court determined that Johnson was not disabled, as defined by the ADA and the RA. In making that determination, the District Court found that there was no evidence that Johnson had a physical or mental impairment that substantially limits one or more of his major life activities. The District Court also found no evidence that Amtrak discriminated against Johnson. [8]

Johnson filed a timely notice of appeal. He now argues that the District Court

---

In response to Amtrak's motion for summary judgment, Johnson asserted a new theory—Amtrak failed to abide by a consent decree, which it had entered into in a previous, unrelated case. Specifically, Johnson accused Amtrak of violating a consent decree entered in the matter of Ferreyra v. Amtrak, Civil Action No. 96-2704, in the Northern District of California. The Ferreyra consent decree was the result of 1996 class action suit brought against Amtrak, on behalf of a class of mobility impaired passengers.

The District Court denied Johnson's newly raised consent decree claim on the basis that the claim was untimely. The District Court also noted that venue was properly placed in the Northern District of California. Finally, the District Court found that Amtrak did not violate the consent decree. There is no error in the District Court's denial of Johnson's eleventh hour claim. See Krouse, 126 F.3d at 499.

The District Court also denied Johnson's claims that Amtrak failed to adequately maintain the Albuquerque station, and that Amtrak routinely overbooked its special accommodations reservations. Those claims are not pursued on appeal.

erred in finding that he was not disabled. Also, he asserts that the consent decree is applicable to him and he is entitled to its protections.

## II.    JURISDICTION

The District Court exercised jurisdiction, pursuant to 28 U.S.C. § 1331. We have jurisdiction to review the District Court's grant of summary judgment under 28 U.S.C. § 1291.

## III.    STANDARD OF REVIEW

We review the District Court's order granting summary judgment de novo. Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010). We affirm a district court's grant of summary judgment if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law when viewing the facts in the light most favorable to the non-moving party and drawing all inferences in that party's favor. Montanez v. Thompson, 603 F.3d 243, 248 (3d Cir. 2010).

## IV.    ANALYSIS

A.    Prima Facie Case of Discrimination

To make out a prima facie case of discrimination under the ADA, Johnson must establish that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. 42 U.S.C. § 12132; Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d

8

176, 189 (3d Cir. 2009).[9]

  B.  Johnson Does Not Establish a Prima Facie Case of Discrimination

  Johnson's failure to meet the first prong of this conjunctive prima facie test proves

fatal to his claim. There is no question that Johnson suffers from medical issues that

affect his ability to participate fully in hobbies and other activities that he once enjoyed.

Nonetheless, the discomfort or inconvenience that accompanies Johnson as a result of his

diabetes, colitis, and back, neck, and knee injuries does not constitute a disability, as

defined by the ADA.

  The ADA defines "disability" with respect to an individual as "(A) a physical or

mental impairment that substantially limits one or more major life activities of such

individual; (B) a record of such impairment; or (C) being regarded as having such an

impairment ...."[10] 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not

---

  The same standards govern Johnson's ADA and RA claims. As such, we may examine them utilizing the same analytical framework. McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same").

  Before the District Court, Johnson maintained that he qualified as disabled because he has a physical impairment that substantially limits one or more of his major life activities. He never asserted that he has a record of such impairment, or that he is regarded as having such impairment.
  On appeal, Johnson now argues that "[h]e can be regarded as being disabled if he has a record of such impairment." Appellant's Br. 13. This is a conflated misstatement of 42 U.S.C. § 12102(1)(B) & (C). Further, Johnson's newly raised theory is improper at this juncture. See Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 142 (3d Cir. 2001) ("Generally, barring exceptional circumstances, like an intervening change in the law or the lack of representation by an attorney, this Court does not review issues raised for the first time at the appellate level.").

limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

Similarly, the Office of the Transportation Secretary has defined "major life activities," as they apply to transportation providers, like Amtrak, as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and work."  49 C.F.R. § 37.3.  Although not defined by the transportation regulations, the Supreme Court of the United States has defined "substantially limits" as:

> unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-96 (2002) (citing 29 C.F.R. § 1630.2(j)).

In assessing the substantially limiting nature of the impairment, we must consider the nature, severity, duration, and permanency of the impairment.  Id.  Johnson's diabetes and colitis clearly constitute physical, and likely permanent, impairments.  Nonetheless, Johnson has not submitted any facts demonstrating that these impairments limit one or more of his major life activities for a sustained period of time.  As evidenced by his actions from May 6, 2006 to May 12, 2006, Johnson is capable of vacationing at long

10

distances away from his home.  In spite of his diabetes and colitis (and even back, neck, and knee injuries), he is able to drive himself and engage in sightseeing.  He eats in restaurants.  He is capable of walking, at least short distances, to restaurants and restrooms.

Additionally, although Johnson's physical impairments may be permanent, he is able to control negative symptoms by maintaining a healthy diet, checking his blood sugar, and taking medication.  See Sutton v. United Airlines, Inc., 527 U.S. 471, 482-83 (1999) (holding that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.")[11]  The diet and medication regimen that Johnson maintains in order to remain healthy does not constitute a substantial limitation.

## V.  CONCLUSION

Drawing all reasonable inferences in Johnson's favor, this Court finds that the paucity of evidence remains.  Johnson has failed to adduce any evidence from which a reasonable juror could find in his favor.  There is no basis for this Court to disturb the District Court's decision to grant summary judgment.  There are no genuine issues as to any material facts for resolution by the fact finder.  We will affirm the order of the

---

Johnson commenced the instant action in May 2008.  The ADA was subsequently amended, and the holding of Sutton, as expressed above, was overruled.  ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).  Nonetheless, the parties have cited no authority, and the Court finds none, holding that such amendments are to be applied retroactively.  Thus, this Court applies the law governing at the time this action was filed.

11

District Court.