

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-7-1996

# Antol v. Sec Dept Defense

Precedential or Non-Precedential:

Docket 95-3254

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Antol v. Sec Dept Defense" (1996). *1996 Decisions*. Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-3254


KENNETH C. ANTOL


Appellant


v.


WILLIAM J. PERRY, Secretary
Department of Defense, (Defense Logistics Agency)


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil Action No. 94-1282)


Argued October 31, 1995

Before:  NYGAARD, ALITO and SAROKIN, <u>Circuit Judges</u>

(Opinion Filed May 7, 1996)

BRUCE A. BAGIN (Argued)
Wienand & Bagin
312 Boulevard of the Allies
Suite 700
Pittsburgh, PA 15222
Attorney for Appellant

BONNIE R. SCHLUETER (Argued)
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219
Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Kenneth C. Antol sued the Defense Logistics Agency of the Department of Defense, alleging gender discrimination under Title VII, 42 U.S.C. § 2000e-16(a), disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791, and a violation of the Vietnam Era Veterans' Readjustment Assistance Act (VEVRA), 38 U.S.C. § 4214. Both parties moved for summary judgment; the district court granted the Agency's motion on all claims. We conclude that the district court properly granted summary judgment for the Agency on Antol's gender discrimination claim and his claim for non-monetary relief under VEVRA, that it should have dismissed his VEVRA claim for money damages for lack of jurisdiction, and that it properly denied his motion for summary judgment on his disability discrimination claim.[0] We find, however, a material issue of fact precluding summary judgment for the Agency on Antol's disability discrimination claim. Therefore, we will affirm in part, reverse in part, and remand the cause to the district court for it to consider the disability discrimination claim brought under the Rehabilitation Act.

I.

---

[0] "[W]hen an appeal from a denial of summary judgment is raised in tandem with an appeal of an order granting a cross-motion for summary judgment, we have jurisdiction to review the propriety of the denial of summary judgment by the district court." Nazay v. Miller, 949 F.2d 1323, 1328 (3d Cir. 1991).

Antol is employed by the Defense Logistics Agency as a Budget Assistant. He is also a veteran of the United States Army, with a seizure disorder amounting to a "30 percent or more disability." As required by VEVRA, the Agency promulgated an affirmative action plan for disabled veterans. That plan provides that highly qualified veterans with 30% or more disability would be preferred for available positions and afforded a non-competitive interview, before competitive interviews of merit candidates and before the selecting officer receives the merit promotion list. The plan allows disabled veterans to be considered before the general competition for a position in the hopes that more would be promoted than under a wholly competitive procedure.

In 1991, Antol submitted an application for "Contract Specialist GS-1102-5, Target 9," a trainee position which eventually leads to a professional-level grade, requiring either specific job experience or a college degree. There were two positions available in this job classification. When he applied, Antol had approximately 30 college credit hours, but no degree. The Agency certified Antol as qualified for the position based on his work experience. To afford Antol a non-competitive interview, the Agency's office in Philadelphia referred Antol's application to Mr. Gomez, the selecting officer's supervisor in Pittsburgh, who then referred it to Mr. Smith, the selecting officer. Contrary to the explicit requirements of the plan, Smith received a list of the merit candidates before Antol's non-competitive interview.

Smith interviewed Antol first, but did not offer him the position.  Later, Smith interviewed Antol again, then as a merit candidate.  Between Antol's two interviews, Smith interviewed three female applicants:  Arlene Bigger, Karen Davis, and Angelmarie Scott.   Smith selected Davis and Scott, who each hold a college degree but are not disabled veterans.  According to Smith's affidavit, Antol was informed on November 18, 1991, that he had been rejected.[0]

Antol initiated informal counselling within the defendant Agency, claiming that he was not selected for the promotion based on his disability.  Antol then filed a formal complaint alleging disability discrimination.  The Agency investigated his complaint and issued its final decision, which found no discrimination.  Antol appealed the final Agency decision to the Office of Federal Operations of the Equal Employment Opportunity Commission.  After exhausting his administrative remedies on the charge of disability discrimination, Antol sued the defendant Agency in federal court.  Both parties moved for summary judgment.

II.

---

[0]This date is relevant to the dispute over whether Antol is entitled to a jury trial and compensatory damages under the Civil Rights Act of 1991, which took effect on November 21, 1991.  In Landgraf v. USI Films, 114 S. Ct. 1483 (1994), the Supreme Court ruled that the Act did not apply retroactively.  Because the district court granted summary judgment, it did not have occasion to rule on Antol's request for a jury trial and compensatory damages or to address his argument that Landgraf does not apply because he alleges a continuing violation.  The district court should address this issue in the first instance.

The affirmative action plan required the Agency to refer qualified disabled veterans for non-competitive selection before referring other candidates.  Antol contends that the Agency discriminated against him because he is disabled and violated VEVRA when, contrary to the terms of the plan, it referred his name along with the names of the three other merit candidates.  He also contends generally that the Agency did not select him for the position because he is disabled.  The Agency offered as a legitimate non-discriminatory reason that Smith chose the best qualified candidate based on his preference for a college graduate and based on the candidate's work experience.  Because the two successful candidates were female, Antol also claims gender discrimination.

On appeal from summary judgment, we view the evidence de novo and in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.

> There must, however, be sufficient evidence
> for a jury to return a verdict in favor of
> the nonmoving party; if the evidence is
> merely colorable or not significantly
> probative, summary judgment should be
> granted.

Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994) (citations omitted).

### III.

Antol challenges the summary judgment for the Agency on his gender discrimination claim, arguing that when the Agency

chose two females for the position instead of him, it violated Title VII. The Agency argues that we should affirm the summary judgment on two grounds: 1)Antol failed to exhaust administrative remedies;[0] and 2) Antol failed to produce evidence of pretext. We find that Antol failed to exhaust his administrative remedies and will affirm the summary judgment for the Agency on this claim.

The Agency points out that Antol never asserted gender discrimination in any of the administrative proceedings. Antol responds that gender discrimination was fairly within the scope of the EEOC proceedings investigating his disability discrimination claim. He cites Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984) (per curiam), to establish the proposition that he is excused from exhausting his administrative remedies.

> In Waiters we held:
> The relevant test in determining whether
> appellant was required to exhaust her
> administrative remedies, therefore, is
> whether the acts alleged in the subsequent
> Title VII suit are fairly within the scope of
> the prior EEOC complaint, or the
> investigation arising therefrom.

Id. at 237. At issue was whether Waiters' suit in federal court, alleging a retaliatory firing for filing previous complaints with the EEOC, was fairly within the earlier EEOC complaint charging retaliation. We held that the plaintiff's suit was not barred for failure to exhaust administrative remedies because the core

---

[0]The district court did not address the Agency's argument that Antol failed to exhaust his administrative remedies for the gender discrimination claim. As exhaustion is a prerequisite to bringing suit, we will address this threshold issue.

grievance in the suit filed and the earlier EEOC complaint were the same--retaliation.  Requiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory acts fell squarely within the scope of the earlier EEOC complaint or investigation.

Unlike the suit in <u>Waiters</u>, Antol's gender discrimination claim does not fall within the scope of the EEOC complaint or investigation.  The affidavit of the EEO Manager responsible for processing Antol's complaint stated that:
> the issue and basis for the complaint presented to the EEO counselor was that of non-selection for promotion based upon an alleged physical handicap (seizure disorder). Mr. Antol did not raise the issue of sex discrimination at the informal counseling stage of the administrative process. . . .

The affidavit further provides that Antol failed to raise gender discrimination in the formal administrative process as well, and that "the sole issue investigated was that of handicap discrimination."

Antol asserts here that investigation of his disability discrimination complaint
> must inevitably have developed the facts of the alleged discriminatory event:  two women were promoted, while a man was not promoted; furthermore, there is a history of women being offered advancement through promotion to the position in question. . . . These acts were squarely before the investigator and <u>could</u> have been investigated.

(emphasis added).  Antol even admits that he never suspected gender discrimination during the administrative process.

Nonetheless, he now argues that gender discrimination fell within the scope of the EEOC investigation.  We disagree.

The specifics of his disability discrimination charge do not fairly encompass a claim for gender discrimination merely because investigation would reveal that Antol is a man and the two employees who received the positions are women.  The investigation focused, quite properly we think, on the gravamen of Antol's complaint--disability discrimination.  Neither the EEOC nor the agency were put on notice of a gender discrimination claim.  The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.  Antol failed to exhaust administrative remedies for his gender discrimination claim.

IV.

Antol seeks to recover from the Agency under 38 U.S.C. § 4214(c) for violating its affirmative action plan for disabled veterans.  He argues that when Congress included language in VEVRA instructing agencies to incorporate their affirmative action plans for disabled veterans into Rehabilitation Act §501(b) affirmative action plans, Congress created a private right of action for violation of a VEVRA affirmative action plan.  The Agency responds that VEVRA's section regulating employment and training does not contain an express waiver of sovereign immunity, that there is no express private cause of action, and that no private cause of action against the government can be inferred.  We agree with the Agency that VEVRA contains no waiver

of sovereign immunity for Antol's claim for money damages and will therefore vacate the summary judgment and remand the cause to the district court for it to dismiss this claim. We also agree that VEVRA § 4214 does not provide a private right of action and will affirm the summary judgment on Antol's claim for non-monetary relief under VEVRA.

## A.

> Section 403 of VEVRA, 38 U.S.C. § 4214, provides:
>
> (a)(1) The United States has an obligation to assist veterans of the Armed Forces in readjusting to civilian life since veterans, by virtue of their military service, have lost opportunities to pursue education and training oriented towards civilian careers. . . . <u>It is</u>, therefore, <u>the policy</u> of the United States <u>and the purpose of this section to promote</u> the maximum of employment and job advancement opportunities within the Federal Government for disabled veterans and certain veterans of the Vietnam Era and of the post-Vietnam Era who are qualified for such employment and advancement.
>
> ***
>
> (c) Each agency shall include in its affirmative action plan for the hiring, placement, and advancement of handicapped individuals in such agency as required by section 501(b) of the Rehabilitation Act of 1973 (29 U.S.C. 791(b)), a separate specification of plans . . . to promote and carry out such affirmative action with respect to disabled veterans in order to achieve the purpose of this section.

(emphasis added). Thus, under VEVRA, the Agency must include in its affirmative action plan required by the Rehabilitation Act a separate specification of its plan for disabled veterans.

## B.

It is a "well-settled principle that the federal government is immune from suit save as it consents to be sued." FMC Corp. v. U.S. Dept. of Commerce, 29 F. 3d 833, 839 (3d Cir. 1994)(in banc) (internal quotations omitted). As an agency of the United States, sovereign immunity protects the Defense Logistics Agency of the Department of Defense. In Re University Medical Center, 973 F.2d 1065, 1085 (3d Cir. 1992). The federal government must unequivocally consent to be sued and the consent "must be construed narrowly in favor of the government." FMC Corp., 29 F.3d at 839. The Supreme Court cautioned in Touche Ross & Co. v. Redington, 442 U.S. 560, 571, 99 S. Ct. 2479, 2486 (1979), that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."

Antol asserts that VEVRA's express requirement--that the Agency include its affirmative action plan for disabled veterans in its Rehabilitation Act affirmative action plan-- suffices to incorporate the Rehabilitation Act's waiver of sovereign immunity into VEVRA. However, merely mentioning the Rehabilitation Act constitutes neither an express nor an unequivocal waiver of sovereign immunity from suit under VEVRA. We cannot enlarge the waiver in the Rehabilitation Act "beyond what the language of the statute requires." U.S. v. Idaho, ex rel. Director Dep't. of Water Resources, 508 U.S. 1, 113 S. Ct. 1893, 1896 (1993). The Agency correctly argues that the language in § 4214 does not purport to waive sovereign immunity or to create an express cause of action. Nevertheless, Antol contends that when Congress amended the Rehabilitation Act in 1978 to

include the remedies of § 505,[0] Congress knew that § 403 of VEVRA mentioned Rehabilitation Act § 501, and therefore Congress intended to incorporate into VEVRA the rights, remedies, and waiver of sovereign immunity expressed in the Rehabilitation Act.

The Supreme Court made clear, however, in <u>U.S. v. Nordic Village Inc.</u>, 503 U.S. 30, 112 S. Ct. 1011 (1992), that

> the "unequivocal expression" of elimination of sovereign immunity that we insist upon is an expression in statutory text.  If clarity does not exist there, it cannot be supplied by a committee report.

112 S. Ct. at 1016.  As we stated in <u>Beneficial Consumer Discount Co. v. Poltonowicz</u>, 47 F.3d 91 (3d Cir. 1995),

> even if we were disposed to imply a cause of action . . . , we could not imply a waiver of sovereign immunity with respect to that cause of action without running afoul of the well-established injunction against recognizing a waiver of federal sovereign immunity not evidenced in the statutory text.

<u>Id.</u> at 95, citing <u>Idaho</u>, 113 S. Ct. at 1896; <u>see</u> <u>also</u> <u>Dorsey v. U.S. Dept. of Labor</u>, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (legislative history cannot supply an express or unequivocal waiver).

---

[0]Rehabilitation Act § 505(a)(1) provides:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) . . . shall be available, with respect to any complaint under section 791 of this title, to any employee . . . aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. . . .

29 U.S.C. § 794a(a)(1).

The district court did not address whether VEVRA contained an express waiver of sovereign immunity. It first concluded that the mere reference in VEVRA to the affirmative action plan required under § 501(b) of the Rehabilitation Act does not provide an express private cause of action. It then concluded that a private cause of action could not be inferred because it found no evidence that Congress intended a private cause of action.[0] Although it reached the correct result, the district court first should have considered whether Congress unequivocally expressed a waiver of sovereign immunity in VEVRA, because "[s]overeign immunity is jurisdictional in nature." FDIC v. Meyer, 114 S. Ct. 996, 1000 (1994).

Antol cannot point to any language in VEVRA expressing a waiver of sovereign immunity for his claim under 38 U.S.C. §4214(c). Moreover, Congress did not include in VEVRA a section adopting the rights or remedies of the Rehabilitation Act. To construe the reference in VEVRA to the Rehabilitation Act as a waiver of sovereign immunity, which Antol would have us do, we would have to heap inference upon inference. But we cannot inferentially incorporate the waiver from the Rehabilitation Act

_____

[0]The district court offered in support of its decision that the courts have unanimously held that another section of VEVRA, 38 U.S.C. § 4212(a) (formerly § 2012(a)), does not create an implied private cause of action against federal contractors, citing Harris v. Adams, 873 F.2d 929 (6th Cir. 1989), and Barron v. Knightingale Roofing, Inc., 842 F.2d 20 (1st Cir. 1988). The Courts of Appeals in Harris and Barron applied the factors from Cort v. Ash, 422 U.S. 66 (1975), and found that there was no evidence of congressional intent to create a private right of action and that implying one would conflict with VEVRA's legislative scheme. See 873 F.2d at 932; 842 F.2d at 21-22.

into the VEVRA section at issue; a waiver in VEVRA must be unequivocally expressed, and the waiver of sovereign immunity in the Rehabilitation Act must be narrowly construed. Therefore, we hold that Antol cannot maintain an action for money damages against the Agency under VEVRA.

## C.

To the extent that the Administrative Procedure Act, 5 U.S.C. § 702,[0] waives sovereign immunity for non-monetary claims made directly under 38 U.S.C. § 4214, we will address whether we can infer a private right of action under VEVRA. Antol again argues that VEVRA's reference to the Rehabilitation Act suffices to create a private right of action; however, that reference does not purport to incorporate the rights and remedies of the Rehabilitation Act into VEVRA. Analyzing the factors articulated in <u>Cort v. Ash</u>, 422 U.S. 66 (1975), we agree with the Agency and the district court that there is no private right of action under 38 U.S.C. § 4214.

"The crucial question is whether Congress intended to create such a right." <u>American Tel. & Tel. Co. v. M/V Cape Fear</u>, 967 F.2d 864, 866 (3d Cir. 1992). The statute is silent on

---

[0] Neither party mentioned the Administrative Procedure Act, much less the waiver of sovereign immunity for non-monetary relief, and Antol did not seek review under the APA. Arguably, the agency's action in failing to follow the affirmative action plan for disabled veterans, which it created and adopted, could be directly challenged under the APA; however, we hesitate to proceed upon this ground for review. This complex area of administrative law has not been briefed before us, nor has appellant sought review of the Agency's action under it. Therefore, because Antol seeks review only under VEVRA itself, he must show that a private right of action exists.

whether an agency can be sued for failure to comply with its own affirmative action plan for disabled veterans, and there is nothing in the legislative history indicating that Congress intended a private right of action.

Antol asserts that if there is no cause of action against the agency, then § 4214(c) has no enforcement mechanism. However, VEVRA specifically provides for the Office of Personnel Management's oversight and review of the affirmative action plans required under it:

> The Office of Personnel Management shall be responsible for the review and evaluation of the implementation of this section and the activities of each agency to carry out the purpose and provisions of this section.

38 U.S.C. § 4214(d). Section 4214(d) also provides for annual reports to Congress on the progress made under the plans. Pursuant to its duty under § 4214(d), the Office of Personnel Management has authored regulations specifically detailing the duty of federal agencies to create, implement, and improve affirmative action plans for disabled veterans. See 5 C.F.R. §§720.301–720.306.

There may be many reasons why Congress chose not to provide for private suit against an Agency under VEVRA to enforce § 4214(c). We will not speculate as to what those reasons are. Regardless of whether we would agree with those reasons, Congress did not intend a private right of action, and we cannot create one under the guise of statutory construction. Therefore, we will affirm the summary judgment on Antol's claim for non-

monetary relief under VEVRA, and we will reverse and remand Antol's claim for monetary relief under VEVRA for the district court to dismiss for want of jurisdiction.

V.

Although Antol cannot sue the Agency under VEVRA, nonetheless, he has a remedy under the Rehabilitation Act of 1973. The Rehabilitation Act's extensive statutory scheme protects disabled individuals, regardless of veteran status, from discrimination by their Agency employers and requires implementation of an affirmative action plan. 29 U.S.C. §§ 791, 794. Under § 501 of the Rehabilitation Act, Antol argues that the Agency failed to follow its affirmative action plan, in violation of the Act, and that the violation constitutes a breach of its duty to reasonably accommodate individuals with disabilities. Antol also argues generally that in failing to promote him, the Agency discriminated against him based on his disability.

> In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose--to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. . . . In addition, courts routinely employ the Title VII burden-shifting rules in pretext cases brought under the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., which prohibits disability discrimination in public employment.

Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995). "Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining

liability are the same."  McDonald v. Commonwealth of Pa., Dep't.

of Public Welfare, 62 F.3d 92, 95 (3d Cir. 1995).

A.

Antol miscasts his case as one involving accommodation,

citing the following discussion in Prewitt v. United States

Postal Service, 662 F.2d 292 (5th Cir. 1981):

> Preliminarily, however, we should observe
> that section 501 requires affirmative action
> on the part of federal agencies; unlike
> section 504 of the Rehabilitation Act and
> Title VII of the Civil Rights Act which
> usually require only nondiscrimination. . . .
> [S]ection 501 requires that federal agencies
> do more than just submit affirmative action
> plans--section 501 "impose[s] a duty upon
> federal agencies to structure their
> procedures and programs so as to ensure that
> handicapped individuals are afforded equal
> opportunity in both job assignment and
> promotion."

Id. at 306 (quoting Ryan v. FDIC, 565 F.2d 762, 763 (D.C. Cir.

1977)).

That Antol's allegations center around an affirmative

action plan does not render it a reasonable accommodation case.

Reasonable accommodation refers to affirmative efforts which the

employer must take in order to ensure that an employee can

perform the essential job functions.  See McDonald, 62 F.3d at

92.  Employers can not legitimate their failure to promote or

hire a disabled individual if they can remedy an individual's

inability to perform the required job function through reasonable

accommodation, such as by providing special equipment or making a

simple change in job structure.  Where an employer can

accommodate a disabled individual without undue burden, the

refusal to make necessary accommodations can become unreasonable and discriminatory. See Americans Disabled for Accessible Pub. Transp. v. Skinner, 881 F.2d 1184, 1192 (3d Cir. 1989) (in banc).

In Buckingham v. United States, 998 F.2d 735 (9th Cir. 1993), on which Antol relies, the plaintiff sought a transfer to an available position in another city to allow him to pursue AIDS therapy. The court held that this accommodation, especially where the condition was life-threatening, was reasonable and necessary in order to enable the plaintiff to continue performing his job. The court emphasized that the plaintiff did not seek another job or a promotion. Antol, however, did seek a different position and did not need accommodation to qualify him or enable him to perform it.

The Agency did not defend by arguing that Antol was unqualified. Rather, it argued that the selecting officer considered him less qualified for the trainee position than the two successful candidates. Accommodation regards efforts that address the individual's ability to perform a job, not his entitlement to it. For that reason, the district court appropriately did not analyze his case as one involving the duty of reasonable accommodation.

B.

Antol also argues that the Agency intentionally discriminated against him. In response to Antol's prima facie case, the Agency articulated as its legitimate non-discriminatory reason for not selecting Antol that the selecting official preferred an applicant with a college degree and felt that the

work experience of the two successful candidates made them better qualified for the job. The burden then shifted to Antol to produce sufficient evidence of pretext, rebutting the Agency's legitimate non-discriminatory reason. The district court characterized Antol's evidence as consisting merely of a stray remark and a single violation of the affirmative action plan. It held that a single violation of an affirmative action plan does not constitute a violation of the Rehabilitation Act, and further opined that although the violation of the affirmative action plan is evidence of discrimination, Antol produced insufficient evidence of pretext to rebut the Agency's proffered legitimate non-discriminatory reason. It therefore granted the Agency's motion for summary judgment. We will reverse.

We note at the outset that we need not and do not consider whether a single violation of an Agency's affirmative action plan mandated by the Rehabilitation Act constitutes a violation of the Act. As we stated, supra, VEVRA does not provide an action against the Agency for failure to comply with 38 U.S.C. § 4214(c)'s mandatory affirmative action plan. Thus, Antol cannot transform an alleged VEVRA violation into a per se Rehabilitation Act violation.[0]

---

[0]Antol did not produce evidence that the Agency violated its Rehabilitation Act affirmative action plan. At issue is the affirmative action plan for disabled veterans required by VEVRA, not the plan required by the Rehabilitation Act. The dissent, however, would find that VEVRA expressly provides a private right of action and incorporates the Rehabilitation Act's remedies by requiring agencies to include their VEVRA affirmative action plan for disabled veterans in their Rehabilitation Act affirmative action plan for disabled individuals.

Contrary to the characterization adopted by the Agency and the district court, Antol's evidence did not consist merely of a single violation of an affirmative action plan and a stray remark by a non-decisionmaker.  Rather, Antol produced the following evidence of pretext:  1) that the Agency violated its affirmative action plan for disabled veterans by failing to provide Antol a truly non-competitive interview; 2) that, in general, selecting officials repeatedly resisted full implementation of the affirmative action plan; 3) that the selecting official's supervisor, who was involved in the selection process, uttered grossly distasteful epithets against Antol regarding his disability, referring to him as "spasm head;" 4) that the position did not require a college degree and was a trainee position; and 5) that the selecting official changed his justification for not selecting Antol after the personnel staffing specialist pointed out that his justification for not selecting Antol would not suffice.  Accordingly, we find that the record reflects a genuine issue of material fact regarding whether the Agency's asserted reason for not selecting Antol is a pretext for discrimination.

In Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), we stated that, for a plaintiff to prevail:
> when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action.

32 F.3d at 764. We do not require the plaintiff to adduce evidence directly contradicting the defendant's proffered legitimate reasons. Id.

In support of Antol's motion for summary judgment and in opposition to the Agency's motion, Antol submitted testimony by Mr. Hubbard, a personnel staffing specialist for the Agency who has special responsibility for the affirmative action plan, that in Antol's case, the Agency violated its affirmative action plan[0] by providing the list of other candidates to the selecting official before Antol's non-competitive interview. In addition to providing the merit list prematurely, Personnel failed to provide the selecting official with the required command policy statement in support of affirmative action. Hubbard also testified that Agency personnel actively resisted efforts to implement the affirmative action plan, and that the plan rarely, if ever, resulted in non-competitive hiring of a disabled veteran. The Agency's failure to adhere to its own rules is evidence of discriminatory intent. See Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1422-23 (3d Cir.) (in banc), cert. denied, 502 U.S. 941 (1991).

---

[0] We recognize that the affirmative action plan at issue provides a preference for disabled individuals who are veterans. Standing alone, evidence that the Agency violated this plan in Antol's case might not be sufficient to defeat a motion for summary judgment. Nevertheless, when combined with the other evidence which casts doubt on the credence of the asserted reason for the defendant's employment decision, an inference of discriminatory motive is permissible.

In the context of Title VII, the Ninth Circuit has stated that "evidence that the employer violated its own affirmative action plan may be relevant to the question of discriminatory intent." Gonzales v. Police Dep't., San Jose, Cal., 901 F.2d 758, 761 (9th Cir. 1990); see also Yatvin v. Madison Metro. School Dist., 840 F.2d 412, 415-416 (7th Cir. 1988) (violation of a voluntary affirmative action plan might help support a claim of discrimination); Craik v. Minnesota State University Bd., 731 F.2d 465, 472 (8th Cir. 1984) ("evidence that employer has failed to live up to [a voluntary] affirmative action plan is relevant to the question of discriminatory intent."). But see Liao v. Tennessee Valley Authority, 867 F.2d 1366, 1369 (11th Cir. 1989), cert. denied, 494 U.S. 1078 (1990) (failure to give preference under voluntary affirmative action plan cannot support allegation of discrimination). The circumstances of the failure to follow the affirmative action plan bear on its relevance. Here, the crux of the Agency's affirmative action plan is an applicant's enhanced opportunity for selection through non-competitive consideration. Although the Agency granted Antol an initial and separate interview, the selecting official's knowledge of the merit candidates eviscerated the plan's core benefit: non-competitive consideration. The Agency's failure to follow its own plan in Antol's case and the more general active resistance by selecting officials to its implementation is relevant under Fed. R. Evid. 401 as to whether Smith, the selecting official who rejected Antol, fairly considered Antol's candidacy. A reasonable jury

could consider the Agency's failure to take seriously its stated commitment to disabled veterans and the active resistance to implementing that commitment as evidence of discriminatory intent.

In order to defeat the motion for summary judgment, Antol also offered evidence of discriminatory animus: Smith's supervisor, Mr. Gomez, referred to Antol as "spasm head." Antol's affidavit averred that Antol had become accustomed to the epithet. Characterizing it as a "stray remark," the district court afforded it little weight. The district court did not appropriately consider this demeaning remark as probative evidence; because the Agency sent correspondence relating to the selection process and submitted Antol's application through Gomez to Smith, and Gomez discussed Antol's application with Smith, it was much more than a mere stray remark.

Gomez' involvement in and influence on the decisionmaking process was as Smith's supervisor. This is not a case where the person making the statement "was outside the chain of decision-makers who had the authority to hire and fire plaintiff." Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085 (3d Cir. 1995); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 546-47 (3d Cir. 1992), cert. denied, 114 S. Ct. 88 (1993) (six comments made over the five years before decision at issue by individual not working for employer at time of decision too remote to show independently that unlawful discrimination more likely than proffered reason). Evidence that an individual involved in the selection process,

such as the decisionmaker's supervisor, referred to Antol as "spasm head" often enough for Antol to state that he had become accustomed to it, supports an inference of discrimination.  See Wilson v. Susquehanna Township Police Department, 55 F.3d 126, 128-30 (3d Cir. 1995) (statement by decisionmaker's supervisor that "there would be no woman supervisor if he had anything to do with it" was not a stray remark); see also Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 54 (3d Cir. 1989) ("When a major company executive speaks, 'everybody listens' in the corporate hierarchy."), overruled on other grounds as recognized by Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 n.10.  In a recent case, we credited "evidence of age-related animus or bias in the form of a comment made to" the plaintiff by a person involved in the decision to terminate him.  Waldron v. SL Indus., Inc., 56 F.3d 491, 502 (3d Cir. 1995).  We held that:

> [T]he comment may be entitled to some weight when considered by the jury, although standing on its own it would likely be insufficient to demonstrate age-related animus.  In other words, the comment is not irrelevant, especially when coupled with [plaintiff's] other evidence of discrimination.

Id.  Moreover, the slur used by Gomez, as compared to the "suggestion" in Waldron that the plaintiff lose weight to look younger, clearly demonstrates disability-related animus.

Regardless of whether Gomez ever repeated the slur to Smith, it is evidence of the atmosphere and context in which Smith made the employment decision.  The factfinder may likewise consider the evidence regarding resistance to affirmative action

as evidence of the atmosphere in which the Agency made its employment decisions.  See Brewer v. Quaker State Oil Refining Corporation, 72 F.3d 326, 333 (3d Cir. 1995) (evidence of employer's "culture" is circumstantial evidence of discrimination); Ezold, 983 F.2d at 545 (citing Roebuck v. Drexel University, 852 F.2d 715, 733 (3d Cir. 1988) (although temporally remote statements standing alone would not suffice, they support finding of discrimination when combined with other evidence)).

> Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices--evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant.  In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988).  The atmosphere is relevant to whether defendant's asserted legitimate non-discriminatory reasons were pretextual, and relevant to the ultimate issue of whether defendant intentionally discriminated against plaintiff.

A factfinder can use evidence revealing inconsistencies in statements or procedures and evidence revealing a hostile atmosphere to find pretext.  See Glass v. Philadelphia Elec. Co., 34 F.3d 188, 194-195 (3d Cir. 1994); Josey v. John R. Hollingsworth Corp. 996 F.2d 632, 639-641 (3d Cir. 1993).

> [W]e recognize that proof of a discriminatory atmosphere may be relevant in proving pretext since such evidence does tend to add color to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

<u>Ezold</u>, 983 at 546 (internal quotations omitted).

The Agency now asserts that Smith rejected Antol because he preferred a college graduate. There is evidence, however, that the selecting officer changed his original justification for rejecting Antol after Hubbard alerted him to problems with his justification. It is unclear from the record just what that original justification was.

The Agency required Smith to provide a justification letter explaining his failure to select Antol. Ms. Gallo, a personnel support specialist, sent him a sample justification letter. After Smith had completed the interview process, Hubbard spoke with Smith regarding his concerns with Smith's original justification for passing over Antol, in light of the fact that the position was for a trainee. Hubbard testified that he talked with Smith,

> and let him know that justification wouldn't
> fly and told him that he has to be most
> persuasive in describing why he is selecting
> the individuals based on their education,
> experience, and knowledge of the job, and he
> reviewed the letter, but I did not tell him
> what to say.

Hubbard told Smith to write a second justification letter. From this evidence a factfinder could disbelieve the reasons which the Agency now articulates for not selecting Antol. A factfinder might reasonably infer that the justification now asserted is a pretext for the true reason Smith did not select Antol. Where the Agency's own personnel specialist found fault with the justification, and this prompts changes in the justification, a

factfinder could view the final justification as less worthy of credence.

The job announcement for the position indicated that qualified applicants must either have a college degree or three years of experience in specified fields, excluding certain clerical and technical support experience. Antol qualified for the position based on his experience; one of the successful candidates, Ms. Davis, did not. Yet the selecting official considered Antol's experience substantially inferior to that of Ms. Davis. A factfinder could question, as inconsistent, Smith's subjective evaluation when the Agency deemed Antol's experience equivalent to a college degree for qualification purposes, and deemed Ms. Davis' experience alone insufficient to qualify her for the position.

Antol produced sufficient evidence of pretext from which a factfinder could reasonably infer discrimination. In combination, the failure to follow Agency procedures, the decisionmakers' active resistance to the affirmative action plan, the references to Antol as "spasm head" by the decisionmaker's supervisor, and the labile nature of the justification for the employment decision, permit a finding of pretext. Therefore, the Agency failed to show that it was entitled to judgment as a matter of law on Antol's disability discrimination claim, and we will reverse the district court on this issue. Although this evidence permits an inference of discrimination, that result is by no means mandated. Therefore, we will affirm the denial of Antol's cross-motion for summary judgment.

VI.

In sum, we affirm the summary judgment for the Agency on the gender discrimination claim and on the claim for non-monetary relief under 38 U.S.C. § 4214(c). Because VEVRA does not contain a waiver of sovereign immunity from Antol's suit for money damages under § 4214(c), we will reverse the order entering judgment on this claim and remand with instructions for the district court to dismiss it for lack of jurisdiction. Although we affirm the denial of summary judgment in favor of Antol, we find that the district court erred by granting summary judgment to the Agency on Antol's disability discrimination claim, and we therefore reverse and remand the cause for the district court to consider the remaining disability discrimination claim.

ALITO, <u>Circuit Judge</u>, concurring:

I join the opinion of the court, but I wish to clarify my understanding of the significance of the Agency's violation of its Vietnam Era Veterans Readjustment Assistance Act (VEVRA), 38 U.S.C. § 4214, affirmative action plan. We reverse the decision of the district court and remand for further proceedings with respect to Antol's claim that the Agency intentionally discriminated against him because of his disability. In order to succeed on this claim, Antol must prove that (putting aside the question of reasonable accommodation) the Agency gave him <u>less</u> favorable treatment than it would have given an identical applicant without a disability. <u>Southeastern Community College</u>

<u>v. Dans</u>, 442 U.S. 397 (1979).[0]  The VEVRA affirmative action plan required the Agency to give Antol <u>more</u> favorable treatment than either (a) an identical applicant without a disability or (b) an identical applicant with a disability who did not fall within VEVRA's coverage.  While I agree that evidence of the Agency's violation of the VEVRA affirmative action plan meets the low standard of relevance set out in Fed. R. Evid. 401, this evidence seems to me to have very little probative value for the purpose of proving intentional discrimination against Antol.  However, even without this evidence, I think that the proof in the record is sufficient to defeat summary judgment for the Agency under the standard contained in <u>Fuentes v. Peskie</u>, 32 F.3d 759 (3d Cir. 1994)[0], or the somewhat different standards adopted by other circuits.  <u>See, e.g.,</u> <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989 (5th Cir. 1996) (in banc).

SAROKIN, J., concurring in part and dissenting in part.

I join the Court's opinion as to Parts I, II, III, IV.A.  However, because I believe that VEVRA does create a private cause of action, I dissent from Part IV.B.

I do not agree that Congress would require federal agencies to implement affirmative action plans designed to

---

[0]Although Antol's claim is couched as a claim under Section 501 of the Rehabilitation Act, § 791, it is the equivalent of a §504 claim.  <u>See</u> <u>Spence v. Straw</u>, 54 F.3d 196, 198-201 (3d Cir. 1995).
[0]Our court has granted rehearing in banc in a case that presents the question whether the <u>Fuentes</u> standard is correct. <u>See</u> <u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, No. 94-7509.

protect employees from discrimination, but then give employees no

adequate recourse if an agency violated its plan and denied

employees those very procedures designed to protect them.  My

position is based upon my understanding of the statutory scheme

designed by Congress -- an understanding similar to that of the

one reported federal case that is precisely on point, <u>Blizzard v.</u>

<u>Dalton</u>, 876 F. Supp. 95 (E.D. Va. 1995).  The court's statutory

analysis in that case convinces me as a matter of law that

Congress did not enact a legislative toothless tiger.

The deciding issue is the relationship between section

403 and section 501(b).  Section 403(a)(c) states:

> Each agency [of the federal government] shall
> include <u>in its affirmative action plan for</u>
> <u>the hiring, placement, and advancement of</u>
> <u>handicapped individuals in such agency as</u>
> <u>required by section 501(b) of the</u>
> <u>Rehabilitation Act of 1973</u> (29 U.S.C.
> 791(b)), a separate specification of plans .
> . . to promote and carry out such affirmative
> action with respect to disabled veterans in
> order to achieve the purpose of this section.

38 U.S.C. § 4214(c) (emphasis added).

The plain language of § 403(a) does more than "merely

mentioning the Rehabilitation Act."  Majority Opinion, typescript

at 10.  It makes the plan with respect to disabled veterans a

part of the agency's 501(b) plan.  <u>See</u> <u>Blizzard</u>, 876 F. Supp. at

98 ("[A]ffirmative action protection for disabled veterans . . .

comprises part of the Department of [Defense]'s affirmative

action plan under section 501(b) of the Rehabilitation Act.").

Accordingly, there is no need to "enlarge the waiver in

the Rehabilitation Act 'beyond what the language of the statute

requires,'" Majority Opinion, typescript at 10; and there was no need for Congress to provide a private cause of action as part of VEVRA since a person aggrieved under VEVRA is at the same time aggrieved under section 501(b), and since "section 505(a)(1) of the Rehabilitation Act provides that individuals aggrieved under section 501(b) of the Act, can seek redress through a private right of action." Blizzard, 876 F. Supp. at 98. There was also no need for Congress to "include in VEVRA a section adopting the rights or remedies of the Rehabilitation Act," Majority Opinion, typescript at 12, since section 505(a)(1) plainly applies to a 501 plan, of which the 403 plan is merely a subpart. There is no need to "heap inference upon inference," Majority Opinion, typescript at 12, because the statutory scheme is straightforward.

Therefore, as I think the court correctly concluded in Blizzard, I would hold that "Plaintiff's allegation that he suffered discrimination under the disabled veterans portion of the 'Section 501(b) Plan' allows him access to the rights and remedies contained in Title VII of the Civil Rights Act at 42 U.S.C. § 2000e-16." Id. For this reason, I dissent.