

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2007

# Fleeger v. Principi

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Fleeger v. Principi" (2007). *2007 Decisions*. Paper 1518.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1518

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5250

———

SUSAN FLEEGER,

Appellant

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS' AFFAIRS

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-00735)
District Judge: Honorable Terrence F. McVerry

———

Submitted Under Third Circuit LAR 34.1(a),
January 23, 2007

Before: SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

(Filed: March 7, 2007)

————————

OPINION

————————

FUENTES, Circuit Judge.

Susan Fleeger appeals the District Court's dismissal of her Title VII retaliation

claim under 42 U.S.C. § 2000e and her claim under the Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 *et seq.* ("WPA"). We conclude, first, that because Fleeger has failed to engage in activity protected under Title VII, her retaliation claim was properly dismissed. We conclude, second, that because Fleeger has failed to exhaust her administrative remedies with respect to her WPA claim, that claim was properly dismissed as well. We will therefore affirm.

## I.

Fleeger had been employed as a nurse by the United States Department of Veterans Affairs ("VA") Medical Center in Butler, Pennsylvania since 1991, before she began to experience problems at work in 2001. Since 1994, when Fleeger was promoted to registered nurse, Fleeger had been responsible for supervising lower level nurses, making rounds with doctors, transcribing doctors' orders, and for patient care. Her complaints about the VA began to accrue in her fifth year as a registered nurse. In April 1999, Fleeger filed an Equal Employment Opportunity ("EEO") charge against the VA, alleging that the VA denied her participation in a tuition reimbursement program because of her diabetes. The charge was dismissed without a hearing.

On December 31, 2001, Fleeger voiced complaints about VA management outside the agency. She e-mailed President Bush, at the White House's general e-mail address, to complain about working conditions. Fleeger informed the President that VA nurses were regularly asked to provide care not typically permitted in VA hospitals. According to Fleeger, this included implanting intravenous lines and administering blood and

intravenous medications. She reported that nurses were severely overworked, denied vacations, and that their complaints were being ignored by VA management. In the days that followed her e-mail to the President, Fleeger also sent letters and e-mails, voicing similar concerns, to the U.S. Office of Personnel Management and to then-U.S. Senator Rick Santorum.

At the same time that Fleeger was communicating with officials outside the VA, she also notified supervisors within the VA of her concerns. According to Fleeger's appellate brief, when she sent the e-mails to officials outside the VA, she informed her unit manager that she had sent them. Her unit manager then informed the VA's Chief Nurse, Kathy Zeiler, of Fleeger's actions. Fleeger also notes that during a group meeting in January 2002, she again informed Zeiler that she had sent e-mails to officials outside the VA. She told Zeiler that if the improper management she had alleged continued, she would continue to send e-mails.

Soon after these interactions with VA management, on Friday, January 13, 2002, Fleeger was assigned to one of the VA's Transitional Care Units. Around 7:30 p.m. that night, Fleeger called her supervisor, Janice Martin, to inform Martin that the family of a terminally ill cancer patient was very upset and had accused the nurses on duty, including Fleeger, of improper care. After a preliminary investigation, the VA's Medical Center Director determined that Fleeger's conduct could have been patient abuse that was serious enough to warrant an administrative board examination. Fleeger was notified on January 18, 2002 that she would be removed from patient care and assigned to file room duty

3

pending resolution of the investigation.

On March 5, 2002, the administrative board concluded that although Fleeger had "acted unprofessionally," the allegation of patient abuse was unsubstantiated. On May 30, 2002, Fleeger was relieved of file-room duty and reassigned to a position as a "float" nurse in the VA's transitional care program. Fleeger alleges that the float nurse position was inferior to her prior position as a registered nurse because, among other things, she was ineligible for pay differentials based on night and shift work.

About three weeks after the VA transferred her from the file room, Fleeger was informed that the administrative board had cleared her of all patient abuse charges. Nonetheless, allegedly because of the board's conclusion that Fleeger had acted unprofessionally, the Medical Director notified Fleeger in August 2002 that her periodic step increase in salary would be temporarily withheld due to unsatisfactory performance. The VA requested that Fleeger complete a performance improvement plan and receive a satisfactory rating before she could receive the increase. Fleeger proceeded with the improvement plan for about two months in the summer of 2002, but resigned from her position at the VA in October 2002.

Prior to these events in the spring and summer of 2002, Fleeger had felt that the Administrative Board investigation and her assignment to the file room, were improperly motivated. She contacted an EEO counselor on February 13, 2002, and on March 20, 2002 filed an EEO complaint with the VA's Office of Employment Discrimination, challenging these actions as reprisal for her prior EEO activity. After the VA's Office of

4

Resolution Management investigated Fleeger's March complaint, Fleeger requested an immediate final agency decision without a hearing.

The VA's Office of Employment Discrimination Complaint Adjudication issued a final agency decision on April 25, 2003. The agency concluded that all of the incidents of retaliation which Fleeger alleged were "temporary and corrective in nature," and did not rise to the level of "discriminatory harassment" or "disparate treatment" under Title VII, nor was there any evidence that the VA had taken action against Fleeger because of her prior protected activity. The Agency also dismissed Fleeger's constructive discharge claim because she had failed to show that a reasonable employee would have found the work conditions she complained of to be intolerable.

On May 22, 2003 Fleeger filed a Title VII retaliation complaint in the District Court. Later, on February 11, 2004 she filed an Amended Complaint, which included an additional claim under the WPA. In an opinion and order filed on August 15, 2005, the District Court granted the VA's motion for summary judgment in part and denied it in part. The Court granted the motion with respect to Fleeger's Title VII claim, and denied it with respect to her WPA claim. Three months after that decision, in its order and opinion dated November 9, 2005, the Court granted the VA's motion to dismiss the WPA claim for failure to exhaust administrative remedies, under Fed. R. Civ. P. 12(c).

**II.**

5

Fleeger appeals the partial grant of summary judgment on her Title VII claim,[1] but fails to explain how filing an EEO complaint that alleges disability discrimination is a protected activity under Title VII. For essentially the reasons provided by the District Court, we agree that Fleeger cannot pursue this claim under 42 U.S.C. § 2000e.

Briefly, § 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed *any practice made an unlawful employment practice by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added). To establish retaliation under Title VII, a plaintiff must demonstrate that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

Title VII does not bar every conceivable type of employment-related grievance. Title VII bars "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in

_____

[1] We exercise plenary review over the District Court's grant of summary judgment. Mortellite v. Novartis Crop Protection, Inc., 460 F.3d 483, 488 (3d Cir. 2006).

6

certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006)). Whatever the protected activity, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Id.

In Fleeger's case, the agency acknowledged that a Title VII plaintiff must show, among other things, that she engaged in "protected activity" under Title VII, in order to make out a prima facie case for reprisal. The agency identified Fleeger's protected activity as her EEO counseling on February 14, 2002, and determined that she had not engaged in any protected activity prior to her January 18, 2002 assignment to the file room. Although the agency incorrectly determined that Fleeger had engaged in activity protected under Title VII (ultimately denying her claim on other grounds) the District Court correctly determined that no reasonable person could have believed that the underlying incidents Fleeger complained of violated Title VII.

Title VII bars race, color, religion, sex, or national origin discrimination; Fleeger complained of discrimination based on her diabetes and reprisal for her complaints about workplace conditions not related to discrimination. For this reason, Fleeger failed to meet the "protected activity" requirement, and her Title VII retaliation claim was properly dismissed by the District Court.

**III.**

7

Fleeger contends that the District Court incorrectly concluded that she had failed to exhaust her administrative remedies as to her WPA claim.[2] Fleeger argues that she made a good-faith attempt to exhaust the claim in the same EEO complaint that included her Title VII claims.

**A.**

The WPA protects federal employees against agency reprisal for whistleblowing activities, such as disclosing illegal conduct, gross mismanagement, gross waste of funds, or acts presenting substantial dangers to health and safety. See 5 U.S.C. § 2302(b)(8). The Civil Service Reform Act ("CSRA") provides the exclusive remedy for claims brought pursuant to the WPA. See, e.g., Richards v. Kiernan, 461 F.3d 880, 885-86 (7th Cir. 2006) (citing cases).

If a case involves only a whistleblower claim, a plaintiff must first seek relief before the Office of Special Counsel ("OSC"), 5 U.S.C. § 1214(a)(3). Under the CSRA, after a federal employee files her claim with the OSC, the OSC investigates and may petition the Merit Systems Protection Board ("MSPB") on the employee's behalf if it finds a violation. 5 U.S.C. §§ 1214(a)(3)-(4), 1221. If the OSC does not find a violation, the employee, herself, may seek review before the MSPB. Id. MSPB decisions are in turn appealable only to the Federal Circuit. 5 U.S.C. § 7703(b)(1).

The only way that an agency decision under the WPA may be reviewed by a

---

[2] Our standard of review of a dismissal under Fed. R. Civ. P. 12(c) is plenary.

8

federal court, other than the Federal Circuit, is if the plaintiff has filed a "mixed case" complaint—that is, a complaint that raises, in addition to claims under the CSRA like whistleblowing, issues under various anti-discrimination statutes. See 5 U.S.C. § 7703(b)(2) (listing statutes). If the employee raises a "mixed case claim"—for example, one that alleges both WPA and Title VII claims—the employee may seek relief either by filing a complaint with the agency's EEO department, or by appealing directly to the MSPB. 5 U.S.C. § 7702.

### B.

Under any scenario, the WPA has an exhaustion requirement which Fleeger has not met. See Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) ("[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."). Fleeger elected to file her reprisal claims with the VA's EEO office. She now contends that the claims she pursued at the administrative level were "mixed," comprising both a Title VII retaliation claim and a WPA retaliation claim. The record shows, however, that although facts which could support a WPA claim were brought to the attention of the VA, Fleeger did not attempt to pursue such a claim and therefore did not exhaust her remedies with respect to such a claim.

In similar contexts, we have held that "the relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent [district court complaint] . . . are fairly within the scope of the

9

prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (internal quotation marks omitted). An EEO complaint does not encompass a given claim merely because investigation would reveal facts that could support the given claim. Id. at 1296. Rather, in the context of similar Title VII claims, we have recently held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Atkinson v. LaFayette Coll., 460 F.3d 447, 453 (3d Cir. 2006) (internal quotation marks omitted).

Fleeger's first contact with one of the VA's EEO counselors is documented in an "EEO Counselor's Report" dated March 25, 2002 (reporting the date of Fleeger's initial EEO contact as February 13, 2002). The report describes Fleeger's claim as "reprisal," and the counselor notes that Fleeger had filed a prior EEO complaint in 1999. The counselor's report specifies that Fleeger had not raised "mixed case" issues (App. 52), and it informed Fleeger that claims other than disparate treatment based on reprisal, unless raised during informal EEO counseling, may not be included in any formal EEO complaint should Fleeger choose to file one.

Fleeger did file a formal complaint, on March 20, 2002, but she did not add any additional claims. She did, however, define her claims with more specificity. Fleeger submitted her complaint on a standard filled-in form that instructed her to list the basis for each employment related matter that she believed was discriminatory. To this end, the form directs complainants to "list one or more of the following" bases, including race,

10

color, religion, sex, sexual orientation, national origin, age, disability, and "[r]eprisal for prior EEO activity or having opposed discrimination." (App. 511.) Fleeger's filled-in response, indicates "reprisal" as the basis of her claim, and specifies that she had "filed complaints in 2001 and Jan. 2002 about work conditions . . . [i]n response [the VA] removed [her and] placed [her] in isolation/file room . . . ." (Id.) Fleeger's complaint form also indicated that she had legal representation, and listed the name and address of her attorney.

About a month after she filed her formal complaint, Fleeger's counsel received a "Notice of Acceptance" of the complaint from the VA's Office of Resolution Management. In that notice, the VA informed Fleeger's counsel as follows:

> 2. Your client's Complaint of Discrimination . . . states the following:
>
>> A. The complainant was discriminated against on the basis of reprisal with regard to reassignment when:
>>
>>> 1. On January 18, 2001, she was reassigned from Nursing Service to the file room pending the outcome and recommendations of an administrative board of investigation.
>
> . . .
> 4. If you or your client believes that the accepted claim is improperly formulated, incomplete, or incorrect, she has the opportunity to notify this office within 7-calendar days of your receipt of this letter, in writing or by fax, to state her disagreement. . . . If you or your client does not contact this office within 7-calendar days, it will be assumed that the claim is correctly stated.

(App. 513 (footnote omitted).)

Fleeger's counsel responded to the VA's "Notice of Acceptance" and corrected the date of Fleeger's reassignment from 2001 to 2002. (App. 517.) Next, on two more

11

occasions (September 12, 2002 and September 24, 2002), Fleeger's attorney submitted additional evidence of "reprisal for prior EEO activity." (Id.) Fleeger's new evidence covered five new incidents of reprisal, which the VA summarized in an October 29, 2002, "Notice of Receipt and Acceptance of Additional Evidence." The October notice also states that Fleeger "alleged that all of these incidents were a form of harassment on the basis of reprisal *for prior EEO activity*," and that the agency agreed to accept the additional evidence as part of a revised claim "on the basis of reprisal *for prior EEO activity*." (App. 524 (emphasis added).)

Fleeger argues that the mention of "reprisal" throughout the administrative record shows that the scope of her EEO complaint and the investigation arising therefrom encompassed her whistleblowing claim. But stating a claim for reprisal based on EEO activity alone, without any indication of an intention to state a claim for whistleblowing, does not support a reasonable expectation that the agency would investigate a WPA claim. Reprisal "for EEO activity," which can form the basis for a cause of action under Title VII and other statutes, involves employee disclosures *within* the framework of established procedures, and generally does not encompass whistleblowing activity, which usually involves disclosures *outside* established procedures. See Spruill v. Merit Systems Protection Bd., 978 F.2d 679 (Fed. Cir. 1992) (holding filing of an EEO complaint, in which an employee alleged discrimination in violation of Title VII did not constitute a whistleblowing disclosure within the meaning of § 2302(b)(8) (establishing cause of action for WPA claims), but instead, was a nonwhistleblowing disclosure under §

12

2302(b)(9)(A) (establishing cause of action for reprisal based on "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation")).

Thus, when Fleeger claimed reprisal for EEO activity, based on her complaints "in 2001 and Jan. 2002," it was reasonable for the agency to assume that she meant her complaints to her unit manager in late 2001 and to Kathy Zeiler in early 2002. If Fleeger believed that the agency had it wrong, she had numerous opportunities to correct the characterization of her claims. Her counsel undertook to amend her claim several times throughout the process, but never challenged the characterization of Fleeger's claim as "reprisal for EEO activity."[3]

The fact that the final agency decision dismissing Fleeger's claims mentions Fleeger's e-mail messages to the White House and others inside and outside the VA, is insufficient in the face of this administrative record to show that Fleeger diligently pursued a WPA claim. It is clear to the Court that these facts are included in the agency decision as additional background to Fleeger's claims, and do not reflect the substance of the claims she pursued.

**IV.**

---

[3] We note, however, that the District Court's alternative reasoning—that even if Fleeger had raised a WPA claim, she could not have exhausted that claim because the agency failed to investigate and address it—is incorrect. If an agency fails to address a properly raised WPA claim in a mixed case, the District Court must review that failure under the appropriate CSRA standard of review. See, e.g., Robinson v. Dalton, 107 F.3d 1018, 1026 (3d Cir. 1997) (remanding for district court to consider whether the EEOC should have been put on notice plaintiff's claim of retaliatory discharge and therefore investigated that claim).

For all of these reasons, the District Court correctly determined that Fleeger had not exhausted a WPA claim at the administrative level, and that she failed to engage in protected activity under Title VII.