

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2008

# Maslanka v. Johnson & Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2329

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Maslanka v. Johnson & Johnson" (2008). *2008 Decisions*. Paper 50.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/50

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2329
_____

TIMOTHY W. MASLANKA,

Appellant

v.

JOHNSON & JOHNSON, INC.;
JANSSEN PHARMACEUTICAL

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-04-cv-05477)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 19, 2008

Before:  FISHER, JORDAN AND VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed: December 23, 2008 )
_____

OPINION
_____

PER CURIAM

        Timothy W. Maslanka appeals from the order of the United States District Court

for the District of New Jersey granting summary judgment on his discrimination claims

brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (1990).

I.

Timothy Maslanka was employed as a sales representative at Janssen Pharmaceutical Company from June 26, 2000, until his termination almost two years later, effective May 30, 2002. His supervisor for the entire two-year period was Robert Fronius. Maslanka received two positive initial evaluations from Fronius. Things began to change in February 2001, however, as Fronius's evaluations became more and more negative. On April 16 or 17, 2001, Fronius gave Maslanka a very harsh evaluation, which led to a formal warning letter from Fronius, dated April 23, 2001. On the same day he received the formal warning letter, Maslanka filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), complaining that he was being harassed by Fronius on account of his age (Maslanka was considerably older than Fronius). He checked off "retaliation" on the EEOC complaint, but included no explanation. Although he mentioned many work-related reasons why Fronius might be motivated to discriminate against him, none of them was disability-based (or age-based).

Maslanka's efforts to be assigned to a different supervisor failed. In June 2001, he was placed on temporary disability leave for a knee injury. His general practitioner, Dr. Reilly, noted, however, that Maslanka was also suffering from significant anxiety disorder and major depression associated with his stressful work situation. Another

physician, Dr. Mehta, who treated Maslanka during the same time period, came to the same diagnosis. Maslanka remained out on sick leave until Doctor Mehta cleared him to return to his employment at Janssen "without restriction" on December 1, 2001. Addressing Maslanka's anxiety/depression, Drs. Reilly and Mehta recommended that he work under a different supervisor or in a different department. Janssen provided Maslanka with a minivan for his knee injury, but it did not change his job or his supervisor. On Maslanka's return from sick leave, Fronius told him that he did not care about Maslanka's disability and that if his sales numbers did not get better, Maslanka was not going to remain employed at Janssen for long. From Maslanka's point of view, Fronius's negative evaluations from December 2001 on were completely unfounded. Maslanka submitted glowing informal evaluations from his clients about a seminar he organized in December 2001, as well as data showing that he was doing as well as, if not better than, his colleagues.

In January or February 2002, Maslanka filed a claim against Fronius pursuant to Janssen's alternate dispute resolution program. Thereafter, Maslanka and Fronius had minimal contact. In mid-April 2002, Janssen announced a roundtable discussion of physicians regarding its drug, Duragesic, which was scheduled to occur on April 26. Janssen asked Maslanka to send an invitation to one of his clients, Dr. Hess. In accordance with Janssen's Healthcare Compliance Guidelines and policy, which Maslanka admits he knew, the invitation informed the doctor that he would be financially

responsible for his spouse's airline ticket, and for meals and activities not covered by the seminar. Hess accepted the invitation and, owing to the lack of time, Maslanka offered to arrange travel for Hess and his wife using his corporate credit card. Maslanka never "expensed" the cost of the ticket for Hess's wife. The understanding was that Hess would pay him back. In late May 2002, Fronius called Maslanka, demanding that he come to a meeting the next day. Maslanka did not attend the meeting because he had a panic attack, which required attention in the emergency room. Dr. Mehta placed him on a leave of absence on May 29, 2002, "for at least four days." On June 3, 2002, he wrote that Maslanka was "unable to return to work until further notice."

In a letter dated June 14, 2002, Janssen terminated Maslanka's employment, effective May 30, 2002, because he violated its healthcare compliance policy by paying for Mrs. Hess's travel tickets with his corporate American Express card. In September 2002, Maslanka filed another complaint with the EEOC, alleging that he became disabled because of Fronius's continued harassment and that Janssen discriminated against him on account of his disability by terminating his employment.

In 2003, after exhausting his administrative remedies, Maslanka filed a complaint against Janssen and its parent company, Johnson & Johnson (the "defendants"), in United States District Court for the Middle District of Florida; the matter was transferred to the District of New Jersey. Maslanka alleged that he was disabled by generalized anxiety and depression, which substantially limited the major life activities of sleeping, concentrating,

and working.  He claimed that Janssen discriminated against him on account of his disability when it effectively terminated his employment in May 2002, and retaliated against him for filing an EEOC complaint and a complaint against Fronius with Janssen's alternate dispute resolution program.  He sought damages.

After a period of contentious discovery, which closed in October 2006, the defendants moved for summary judgment.  They contended that Maslanka was not disabled under the ADA because he failed to provide sufficient evidence that he was impaired by anxiety and/or depression and because the alleged impairment was temporary and did not substantially limit a major life activity.  Moreover, the defendants claimed that Maslanka was terminated for a legitimate non-discriminatory reason – his violation of company policy – and thus, Maslanka's ADA, hostile environment, and retaliation claims lacked merit.

Maslanka responded, contending that the defendant's proffered reason for terminating him was pretextual.  He disputed the defendants' assertion that the company's invitation for the roundtable discussion was consistent with its policy on health care compliance.  He submitted his own affidavit and one from Dr. Hess, attesting that Maslanka never promised to pay for his wife's ticket and that it was understood that Dr. Hess would reimburse Maslanka for it.  Maslanka also attested that he never "expensed" the cost of Mrs. Hess's travel to the company.  He asserted that there was a genuine dispute of material fact with respect to whether he violated company policy.  He also

5

requested that discovery be reopened so that the defendants could answer outstanding discovery requests made before the discovery period had closed. He claimed that the defendants retaliated against him by thwarting his attempts to obtain employment after he was fired.

The District Court granted summary judgment in the defendants' favor on all claims. The District Court denied Maslanka's request to reopen discovery. It dismissed all claims as to Johnson & Johnson because Maslanka failed to allege its involvement in any discriminatory activity or retaliation. On the merits of his ADA claim, the District Court held that although Maslanka had made out a prima facie case that he was impaired, he failed to show that his impairment substantially limited his major life activities of cognitive function, sleeping or working, and thus, he was not "disabled" under the ADA as a matter of law. For the same reason, the District Court held that Maslanka's hostile work environment claim failed as a matter of law. Alternatively, the District Court ruled that the defendants presented a legitimate non-discriminatory reason for his termination and that Maslanka failed to meet his burden of showing that a genuine dispute of material fact existed as to whether the defendants' proffered reason for his termination was pretextual.

As for Maslanka's retaliation claim, the District Court ruled that Maslanka presented a prima facie case of retaliation but failed to show that the defendants' proffer of a legitimate non-retaliatory reason for his removal was pretextual. The District Court

6

entered an order granting summary judgment and dismissed the action. Maslanka filed this timely appeal.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment, and we apply the same standard that the District Court should have applied. See Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Saldana v. KMart Corp., 260 F.3d 228, 232 (3d Cir. 2001); FED. R. CIV. P. 56(c). We will affirm.

We agree with the District Court's thorough and reasoned analysis that Maslanka was not "disabled" as that term is defined under the ADA. Even assuming in Maslanka's favor that his deposition testimony and the evidence of his depression and anxiety established an impairment under the ADA, there is nothing in this record indicating that his impairment substantially limited the major life activities of sleeping, concentrating, or working. As the District Court correctly noted, under the ADA, Maslanka is "disabled"only if his impairment substantially limits a major life activity. An impairment is "substantially limiting" if the person "is significantly restricted as to the condition, manner, and duration under which [he] can perform a major life activity as compared to

7

the condition, manner, and duration under which an average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Factors to consider in evaluating whether an individual is substantially limited in a major life activity are "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2).

No reasonable juror could conclude from the record evidence that Maslanka's impairment was permanent or would have a long-term impact. According to the medical record notes of Drs. Reilly and Mehta, Maslanka's anxiety and depression was expected to last only so long as Fronius remained his supervisor or continued to give him bad evaluations. Moreover, Maslanka cannot show that he was disabled because his ability to sleep, concentrate, or work was not substantially limited on a long-term basis. See McDonald v. Commonwealth of Pa., Dept. Public Welfare, Polk Center, 62 F.3d 92, 95-96 (3d Cir. 1995). Based on his own testimony, Maslanka's sleeping problems lasted about three days. His cognitive function was not substantially limited as Maslanka, himself, contended that his work performance at Janssen met or exceeded expectations during the relevant time periods. The District Court also properly determined that Maslanka could not show that his ability to work was substantially limited. Both his general doctor and his medical expert provided evidence that Maslanka could perform the same job under a different supervisor and, thus, Maslanka could perform the same job at a

8

different company. Maslanka was recruited to work at Innovex shortly after his termination at Janssen. Indeed, in 2004, the Vice-President of Sales at Innovex recruited Maslanka to join him in a new venture, Akers Biosciences, a startup diagnostic specialty company. Thus, there is nothing in this record to show that Maslanka suffered negative long-term or permanent impact from his impairment.

Even assuming that Maslanka presented a prima facie case of discrimination on account of a disability, he failed to show that Janssen's proffered reason for firing him was pretextual. In ADA discrimination cases, we apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Once an employer presents a non-discriminatory reason for termination under the ADA, the burden shifts to the employee to "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). He must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason for its action, which a reasonable fact-finder could find unworthy of credence, and thus infer that the employer's asserted non-discriminatory reasons were pretextual or fabricated. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

We agree with the District Court's reasoning and conclusion that Maslanka failed to raise a genuine issue of material fact regarding whether Janssen's reason for firing him was pretextual. Janssen submitted evidence that Maslanka was fired because he violated

the company's health care compliance policy. Maslanka did not dispute that he used his corporate credit card to pay for Mrs. Hess's airline ticket or that Janssen's long-standing policy prohibited charging a spouse's travel costs to the company. He argued that he acted in accordance with the wording of Janssen's invitation, which, he claimed, allowed him to charge the cost of a spouse's air travel to the company. As the District Court correctly held, there is no material difference between the wording of the policy and the language in the invitation. See D.Ct. Op. at 33-34. Thus, Janssen's reasons for terminating him were plausible and consistent with its policy. The remainder of Maslanka's arguments, that he did not include the cost of the airline ticket for Dr. Hess's wife in his expense report because Dr. Hess was going to reimburse him for it and that no one at Janssen told him that he was violating the policy at the time, are excuses for his conduct or arguments against his firing, not facts that raise a question as to the legitimacy of Janssen's reasons for firing him. It is not enough for Maslanka to show that Janssen's decision to fire him was unfair, wrong, or mistaken. He must point to evidence suggestive of discrimination. Based on the record evidence, no reasonable juror could conclude that Janssen had violated the ADA by terminating Maslanka based on a pretextual ground. This same reasoning applies to Maslanka's retaliation claim, and we thus conclude that the District Court properly granted summary judgment on that claim as well.

10

Maslanka argues on appeal that the District Court erred in denying his request to reopen discovery. He claims that he should have been afforded an opportunity to develop the record in order to show that the defendants' proffered reason for firing him was pretextual. Less than one month before discovery closed, the defendants answered Maslanka's document requests by objecting to their production. Shortly after discovery closed, Maslanka wrote to defense counsel, asking them to "reconsider" their objections and to produce the documents within seven days. In January 2007, Maslanka reiterated his demand in another letter to defense counsel. In March 2007, he filed a motion to compel discovery, which the Magistrate Judge dismissed without prejudice in April 2007, for reasons that were not set forth in the order. After the defendants filed their motion for summary judgment, Maslanka filed a motion to reopen discovery, which the Magistrate Judge denied in September 2007, because Maslanka failed to preserve his objections to the defendants' answers and because it was untimely. Maslanka renewed his previously denied request to reopen discovery in his sur-reply, which the District Court denied essentially for the same reasons set forth in the Magistrate Judge's order denying Maslanka's earlier request.

We cannot say that the District Court abused its discretion in denying Maslanka's request to reopen discovery. Maslanka did not seek timely District Court review of the Magistrate Judge's decisions to deny the motion to compel or to reopen discovery. Instead, in his sur-reply to the defendants' summary judgment motion, which was filed in

11

November 2007, Maslanka renewed his request to reopen discovery, long after discovery had closed and well into the summary judgment proceedings.

Accordingly, we will affirm the judgment of the District Court. Appellees' motion to dismiss the appeal for failure to provide a statement of issues, see Fed. R. App. P. 10(b)(3)(A), is denied.